**Randy Darnell EASILY, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–06–00322–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

Aug. 16, 2007.

Dissenting Opinion by Judge Keyes
Oct. 4, 2007.

Discretionary Review Refused
Feb. 13, 2008.

Evelyn V. Keyes, J., filed dissenting opinion on motion for en banc reconsideration.

Nicole DeBorde, Houston, TX, for Appellant.

Charles A. Rosenthal, Jr., Dist. Atty.–Harris County, Bridget Holloway, Asst. Dist. Atty.–Harris County, Houston, TX, for state.

Panel consists of Chief Justice RADACK and Justices KEYES and HIGLEY.

## OPINION

SHERRY RADACK, Chief Justice.

The first trial of appellant, Randy Darnell Easily, ended in a mistrial when the jury became deadlocked. In his second trial, a jury convicted appellant of felony possession of over 400 grams of the controlled substance, dihydrocodeinone (Vicodin). Appellant's conviction was enhanced by allegations of two prior felony offenses, to which appellant pleaded true. One prior offense involved possession of a controlled substance; the second involved possession and delivery of a controlled substance. Out of a possible range of 25 years to life in prison as a habitual offender, the jury assessed punishment at 99 years' incarceration. In two points of error, appellant contends that (1) his retained trial counsel was ineffective because he did not provide affidavit support for his motion requesting a free reporter's record from the first trial and (2) the trial court committed constitutional error by denying appellant a free reporter's record of his first trial. We affirm.

## Background

Appellant was arrested as the result of an undercover sting operation. Two of the undercover officers testified for the State at trial. A third officer had been wounded in an unrelated incident and was unavailable to testify. One of the officers who testified conceded that he never saw appellant with the container of dihydrocodeinone later seized by the officers.

Appellant retained Peter Justin to represent him in his first trial, which ended in a mistrial declared on July 22, 2005. Justin moved to withdraw on September 20, 2005, on the grounds that appellant was "without funds to pay for another trial." On the same day, Justin filed an unverified motion in which he asserted that two police officers testified at appellant's trial and requested a "record of that prior testimony to prepare for trial" on the grounds that appellant was "without funds or resources to pay for a record." The trial court granted Justin's motion to withdraw that same day, but did not rule on the motion he filed to request the free record.[1]

On September 28, 2005, the trial court signed an order stating that appellant had "executed an affidavit stating that [he] is without counsel and is financially unable to hire an attorney" and appointing Danny Easterling as counsel to represent appellant. About a month later, on October 26, 2005, the trial court granted a request filed by Easterling for appointment of an investigator, also on grounds of indigency, at a cost not to exceed $750.

Five days later, however, on November 1, 2005, the trial court granted a motion in which appellant requested that counsel appointed on September 28, 2005 be permitted to withdraw and that newly retained counsel, Steven Goins, be substituted. Goins became appellant's trial counsel as of that date.

On November 29, 2005, Goins filed a motion asking that the trial court "provide the record of previous testimony" from the first trial. Despite having been retained, Goins stated in the motion that appellant "is indigent" and that counsel sought to review the testimony from the first trial. The trial court's order denying the motion

---

1. A September 20, 2005 notation by the trial court on Justin's motion states, "Ct did not rule[;] atty Justin w/drew."

reflects two handwritten notations by the trial court. The first notation states, "No evidence presented." The second notation was, "Mr. Easily has retained counsel & previously had retained counsel." Goins represented appellant through the end of trial.

Appellant filed a notice of appeal on the day the judgment was signed, and requested and obtained appointment of appellate counsel on the grounds that he was indigent. Appellant also obtained an order for a free record of his second trial for use on appeal. Newly appointed counsel for appeal, Leah Borg, filed a motion for new trial, claiming that Goins was ineffective in several respects, including the reason presented in this appeal. No hearing on the motion was held. The trial court denied the motion for new trial on June 23, 2006. Borg was permitted to withdraw after a hearing ordered by this Court, and a second counsel for appeal was appointed on September 13, 2006 and continues to represent appellant.

The record thus demonstrates that the trial court found that appellant was indigent on September 28, 2005, after the first trial and before retained counsel Goins substituted for appointed counsel, and was indigent again after the second trial. It is undisputed, however, that appellant was represented by retained counsel Justin at his first trial and by retained counsel Goins at his second trial.

### Indigent Defendant's Right to Free Record of First Trial

Both of appellant's points of error concern claims that he was entitled to a free record of his first trial.

Equal protection demands that the State provide an indigent criminal defendant a transcription of testimony from a previous proceeding if it is needed for an effective appeal *or* an effective defense. *Britt v. North Carolina,* 404 U.S. 226, 227, 92 S.Ct. 431, 433, 30 L.Ed.2d 400 (1971). The interest protected ensures that the trial a person obtains is not determined by "the amount of money he has." *Id.,* 404 U.S. at 231, 92 S.Ct. at 435 (Douglas, J., dissenting) (quoting *Griffin v. Illinois,* 351 U.S. 12, 19, 76 S.Ct. 585, 591, 100 L.Ed. 891 (1956)). *Britt,* like this case, involved a request for a free record after a mistrial. *See id.* The Supreme Court ruled that the following two factors are relevant to determining a defendant's need: the value of the transcription in connection with the defense and the availability of alternative devices that would fulfill the same functions as a transcription. *See id.,* 404 U.S. at 227, 92 S.Ct. at 433–34. Transcription of a prior proceeding is presumptively valuable to a defendant without a particularized showing of need. *Id.,* 404 U.S. at 228, 92 S.Ct. at 434.[2] If an adequate alternative to a transcription is available to the defendant, however, then the trial court does not err in refusing to order the State to provide a free transcription to an indigent defendant. *See id.,* 404 U.S. at 228–30, 92 S.Ct. at 434–35.

An adequate alternative was available in *Britt,* in which the defendant conceded that his counsel could have asked the court reporter to read back the notes of the prior proceeding "well in advance of the second trial." *Id.,* 404 U.S. at 229, 92 S.Ct. at 435. Because an "informal alternative" that appeared "substantially equivalent to a transcript" was available, the Supreme Court ruled that the trial court did not err

---

**2.** In contrast, an indigent defendant must show a particularized need to be entitled to a transcription of a codefendant's trial. *McKib-* *bon v. State,* 749 S.W.2d 83, 85 (Tex.Crim. App.1988).

by denying the defendant's request for a free copy of the transcript. *Id.*, 404 U.S. at 230, 92 S.Ct. at 435.

In *White v. State*, the Court of Criminal Appeals applied, but also distinguished, *Britt* when the court held that denying a continuance to allow an indigent defendant to obtain a transcript of a prior proceeding was reversible error. 823 S.W.2d 296, 300 (Tex.Crim.App.1992). The *White* court presumed that the defendant was harmed in the absence of a showing, by the State, that the defendant did not need the transcription from the earlier proceeding. *Id.* at 299–300. In reaching this conclusion, the *White* court recognized a critical difference from the circumstances of the *Britt* case. *Id.* at 299.

Specifically, in contrast to *Britt*, White did not have access to the court reporter *"well in advance of the second trial." Id.* (quoting *Britt*, 404 U.S. at 229, 92 S.Ct. at 435) (emphasis in *White*). To the contrary, if a conflict in testimony arose at the second proceeding in *White*, the trial court expected defense counsel "to resort to the more cumbersome method of stopping his cross-examination and pausing while the court reporter [found] the relevant notes and read[ ] back the inconsistent testimony to the jury." *Id.* In *White*, therefore, the defendant had no access to the exact testimony of the State's witnesses until trial. *See id.* Moreover, the process of requesting that the court reporter read back the earlier testimony would apply only if the defense independently recalled the testimony from the first trial and believed that it conflicted with the testimony just presented. *See id.* Because of these cumbersome realities and narrow time frame, the *White* court concluded that court-reporter "readbacks" are not a sufficient alternative to a transcription of the actual proceedings. *Id.* at 300.[3]

■ It is axiomatic, however, that a criminal defendant must be indigent in order to be entitled to a free record of any testimony, whether of a trial that ended in a mistrial or of a full trial for appeal. *See Whitehead v. State*, 130 S.W.3d 866, 873–74 (Tex.Crim.App.2004) (noting that rule authorizing a free record for appeal contains oath requirement; holding that "only sworn allegations are to be considered in determining whether a defendant is entitled to a free record") (citing TEX.R.APP. P. 20.2);[4] *see also Abdnor v. State*, 712 S.W.2d 136, 141–43 (Tex.Crim.App.1986) (citing settled law imposing duty on appellant claiming indigency as basis for obtain-

---

**3.** The Court of Criminal Appeals had ruled earlier, in *Billie v. State*, 605 S.W.2d 558, 565 (Tex.Crim.App.1980) (on motion for reh'g), that an indigent defendant's right to a free record following a mistrial extends only to the State's witnesses, because "it is usually only that testimony that could be used for discovery and impeachment," unless the defendant demonstrates a particular need for transcription of other portions of the trial. The Court of Criminal Appeals called into question this aspect of *Billie* in a footnote to *Cook v. State*, 611 S.W.2d 83, 87 n. 3 (Tex.Crim.App. [Panel Op.] 1981) ("The holding in [*Billie*] on rehearing is suspect in light of … [*Britt*]" and other cases that negate any requirement that the defendant establish a "particularized need").

**4.** Rule 20.2. pertains to "Criminal Cases" and states,

> Within the time for perfecting the appeal, an appellant who is unable to pay for the appellate record may, by motion and affidavit, ask the trial court to have the appellate record furnished without charge. If after hearing the motion the court finds that the appellant cannot pay or give security for the appellate record, the court must order the reporter to transcribe the proceedings. When the court certifies that the appellate record has been furnished to the appellant, the reporter must be paid from the general funds of the county in which the offense was committed, in the amount set by the trial court.

TEX.R.APP. P. 20.2.

ing free record to exercise due diligence in asserting indigency; holding that due diligence includes timely filing of affidavit and sustaining indigency claims in affidavit, but does not require that defendant testify).

■ Indigency is determined when the issue is raised and not based on a prior or future point in time. *See Tuck v. State*, 215 S.W.3d 411, 414–415 (Tex.Crim.App. 2007) (holding that time period for purposes of free record on appeal is determined at time of appeal, rather than when defendant was tried); *Abdnor*, 712 S.W.2d at 142 (same).

Article 26.04 of the Code of Criminal Procedure, which governs procedures for appointing counsel, includes procedures for determining indigency at trial. TEX.CODE CRIM. PROC. ANN. art. 26.04(m) (Vernon 2006). For purposes of trial, as opposed to appeal, article 1.051(b) of the Code of Criminal Procedure defines an "indigent" person as "a person who is not financially able to employ counsel." TEX.CODE CRIM. PROC. ANN. art. 1.051(b) (Vernon 2005). A defendant whom the trial court has determined to be indigent "is presumed to remain indigent for the remainder of the proceedings in the case unless a material change in [his] financial circumstances occurs." TEX.CODE CRIM. PROC. ANN. art. 26.04(p).

## Ineffectiveness of Counsel

In his first point of error, appellant contends that his trial counsel was ineffective because he did not provide an affidavit to support his motion requesting a free transcription of the testimony from appellant's first trial. We disagree.

## A. Standard of Review

■ To prevail on his claim of ineffective assistance of counsel, appellant must show that his counsel's performance was deficient, and that there is a "reasonable

probability"—one sufficient to undermine confidence in the result—that the outcome would have been different but for his counsel's deficient performance. *Ex parte Chandler*, 182 S.W.3d 350, 353–54 (Tex. Crim.App.2005) (citing *Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674 (1984)). The purpose of the constitutional requirement of effective counsel is to ensure a fair trial. *Id.* at 353 (citing *Strickland*, 466 U.S. at 686, 104 S.Ct. at 2064). The "benchmark" for evaluating a claim of ineffectiveness, therefore, is whether counsel's conduct "so undermined the proper functioning of the adversarial process" that one cannot rely on the trial "as having produced a just result." *Id.* at 353 (citing *Strickland*, 466 U.S. at 686, 104 S.Ct. at 2064). In that relatively rare instance, only, may a criminal defendant obtain a new trial on the grounds that his attorney provided *constitutionally deficient* assistance. *Id.* at 354. The constitutional right to counsel ensures the right to reasonably effective counsel, but not "errorless" counsel whose competency or accuracy of representation we may judge by hindsight. See *Stafford v. State*, 813 S.W.2d 503, 506 (Tex.Crim.App. 1991); *Ex parte Cruz*, 739 S.W.2d 53, 58 (Tex.Crim.App.1987).

■ To meet his burden to show that his counsel was constitutionally deficient, appellant must establish, by a preponderance of the evidence, that his trial counsel was not acting as "a reasonably competent attorney," and that his advice was not "within the range of competence demanded of attorneys in criminal cases." See *Chandler*, 182 S.W.3d at 354 (quoting *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064). Appellant must also show that counsel's constitutionally deficient performance prejudiced his defense by demonstrating "a reasonable probability that, but for counsel's unprofessional errors, the

result of the proceeding would have been different." *See id.* (citing *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068).

Under this two-pronged analytical framework, appellant must also overcome the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *See id.; Rylander v. State,* 101 S.W.3d 107, 110 (Tex.Crim.App.2003). In evaluating counsel's representation under a *Strickland* analysis, our review is "highly deferential" because we presume that counsel's actions "fell within the wide range of reasonable and professional assistance." *Chandler,* 182 S.W.3d at 354 (quoting *Bone v. State,* 77 S.W.3d 828, 833 (Tex.Crim.App.2002)). Under normal circumstances, the record on direct appeal will not be sufficient to demonstrate that counsel's representation was so deficient and so lacking in tactical or strategic decision-making as to overcome the presumption that counsel's conduct was reasonable and professional. *Bone,* 77 S.W.3d at 833. A *Strickland* claim must, therefore, be "firmly founded" in a record that "affirmatively demonstrate[s]" the meritorious nature of the claim. *Goodspeed v. State,* 187 S.W.3d 390, 392 (Tex.Crim.App.2005). When the record on direct appeal is sufficient to prove that counsel's performance was deficient, therefore, an appellate court "should obviously address the claim." *Robinson v. State,* 16 S.W.3d 808, 813 n. 7 (Tex.Crim.App.2000).

But, when counsel's reasons for failing to do what the defendant contends should have been done do not appear in the record, as, for example, when trial counsel has not been afforded an opportunity to explain his actions, we should not find deficient performance unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Goodspeed,* 187 S.W.3d at 392 (quoting *Garcia v. State,* 57 S.W.3d 436, 440 (Tex.Crim.App.2001)). Unless claims of ineffective assistance are clearly demonstrated of record, *Goodspeed,* 187 S.W.3d at 392, therefore, we normally will not speculate to find trial counsel ineffective when the record is silent on his reasoning or strategy. *See Henderson v. State,* 29 S.W.3d 616, 624 (Tex.App.-Houston [1st Dist.] 2000, pet. ref'd); *Gamble v. State,* 916 S.W.2d 92, 93 (Tex.App.-Houston [1st Dist.] 1996, no pet.).

## B. Discussion

The record of this case lacks any explanation by trial counsel as to why he did not support his request for the free transcription of the first trial with an affidavit demonstrating that appellant was entitled to the free transcription. Though Borg, the first counsel appointed to represent appellant on appeal, filed a motion for new trial contending that trial counsel was ineffective in this regard, no hearing on the motion for new trial was held. The record reflects that the trial court considered the motion for new trial by submission and then denied it. The record further reflects that Borg did not obtain an affidavit from trial counsel in which he might have explained why he did not support the request for the free transcription with the requisite sworn proof. Similarly, Borg did not submit an affidavit by appellant, from which a determination could be made that he was indigent at that time. Because appellant was represented by retained counsel Justin at the first trial and had also retained Goins for this trial, with an intervening period of indigency of just over a month, it is possible that Goins realized that appellant would not be able to meet the evidentiary showing required to establish that he was indigent. *See* Tex.Code Crim. Proc. Ann. art. 1.051(b) (defining "indigent" per-

son as one *"not* financially able to employ counsel") (emphasis added).

Because we lack any explanation by counsel, we decline to conclude that he performed deficiently by not supporting his request for a free record with the required affidavit. To conclude that counsel was ineffective under the record presented would require impermissible speculation concerning his reasoning or strategy. *See Henderson,* 29 S.W.3d at 624; *Gamble,* 916 S.W.2d at 93.

■■■ We conclude, moreover, that the record shows that appellant has failed the first element of the *Strickland* test because he has not demonstrated his trial counsel's deficiency based solely on his not attaching an affidavit to the motion requesting a free record from appellant's first trial. As appellant acknowledges, his counsel cross-examined both police officers whose testimony linked appellant to the offense of possession with intent to deliver. Counsel announced to the trial court that he intended to cross-examine the officers with their earlier testimony. In response, the trial court instructed counsel to refer to that testimony as obtained in an earlier "hearing," as opposed to his "first trial." As the record further demonstrates, trial counsel stated that he had obtained the substance of each officer's testimony from the notes taken by appellant during his first trial.

As in *Britt,* therefore, an alternative to obtaining a transcription was available, specifically, the notes made by appellant on which trial counsel relied to cross-examine the officers. *See Britt,* 404 U.S. at 228–30, 92 S.Ct. at 434–35. As the record demonstrates, trial counsel utilized that alternative and probed the testimony of the officers in the first trial. However unsuccessful appellant deems his trial counsel's cross-examination and impeachment of the officers, the record reflects that meaning-

ful cross-examination to impeach their testimony occurred. Accordingly, the purpose behind obtaining the record of the first trial was attained, albeit from appellant's notes. *See Billie,* 605 S.W.2d at 565 (on motion for reh'g) (noting that obtaining record of State's witnesses from prior trial serves purposes of discovery and impeachment).

Though the State prevailed on some of its objections to portions of trial counsel's cross-examination and impeachment, what appellant deems his trial counsel's lack of success, in the face of the State's objections, fails to demonstrate a reasonable probability, "sufficient to undermine confidence in the result," that the outcome of appellant's trial would have been different, had he obtained the transcription. *See Chandler,* 182 S.W.3d at 354; *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068; *see also Stafford,* 813 S.W.2d at 506; *Cruz,* 739 S.W.2d at 58 (noting that right to effective representation by counsel does not require that counsel be "errorless" or permit reviewing court to judge counsel's performance by hindsight). Accordingly, appellant has also failed to demonstrate that trial counsel's lack of an affidavit to support and demonstrate appellant's indigency prejudiced appellant's defense to the degree that a reasonable probability existed that the result of his trial would have been different. *See Chandler,* 182 S.W.3d at 354; *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068.

We therefore hold that appellant has not satisfied either prong of the *Strickland* test and overrule his first point of error.

### Denial of Free Transcription of First Trial

■■■ In his second point of error, appellant contends that the trial judge committed state and federal constitution-

al error by denying him a free reporter's record of his first trial. Under the settled law addressed above, entitlement to a free record is contingent on demonstrated indigency. *See Whitehead,* 130 S.W.3d at 874; *Abdnor,* 712 S.W.2d at 140; *cf.* Tex.R.App. P. 20.2 (referring to affidavit requirement to support indigency claimed to support free record on appeal). The trial court determines indigency in the exercise of its discretion and on a case-by-case basis. *See Newman v. State,* 937 S.W.2d 1, 3 (Tex.Crim. App.1996); *Gray v. Robinson,* 744 S.W.2d 604, 607 (Tex.Crim.App.1988) (orig.proceeding); *Abdnor,* 712 S.W.2d at 142; *Hornsby v. State,* 65 S.W.3d 801, 802 (Tex.App.-Houston [1st Dist.] 2001, no pet.).

■ Indigency is further determined when the issue is raised, as opposed to a prior or future point in time. *Tuck,* 215 S.W.3d at 415; *Gray,* 744 S.W.2d at 607. Indigency demonstrated at trial, therefore, does not establish indigency on appeal. *Abdnor,* 712 S.W.2d at 142; *Hornsby,* 65 S.W.3d at 802; *see also Ramadan v. State,* 89 S.W.3d 744, 746 (Tex.App.-Houston [1st Dist.] 2002, no pet.) (order of abatement) (rejecting appellant's having retained counsel at trial as dispositive of claim of indigency on appeal).

The issue of appellant's indigency was raised in this case on September 20, 2005, when retained counsel Justin filed a motion to withdraw based on appellant's financially inability to pay for another trial, which the trial court granted, whereupon appointed counsel Easterling assumed representation of appellant. On the same day, Justin also filed an unsworn motion requesting a copy of the testimony from the first trial, on the grounds that appellant was "without funds or resources to pay for a record." A September 20, 2005 notation on Justin's latter motion reflects that the trial court did not rule on Justin's motion. Approximately one month after appointed counsel Easterling began to represent appellant, appellant moved the trial court to permit Easterling to withdraw and to permit retained counsel Goins to appear and represent appellant. Pursuant to the statutory presumption stated in article 26.04(p) of the Code of Criminal Procedure, we may presume that appellant remained indigent from September 28, 2005, when Easterling was appointed to represent appellant, until November 1, when the trial court granted appellant's motion to permit Easterling to withdraw and to permit retained counsel Goins to substitute as appellant's counsel. *See* Tex.Code Crim. Proc. Ann. art. 26.04(p). That presumption disappeared, however, when Goins began to represent appellant as retained counsel. *See id.* (stating that defendant determined to be indigent by the court "is presumed to remain indigent ... unless a material change" occurs in his "financial circumstances").

■ Indigency at trial is defined in terms of a person's financial ability to employ counsel. *See* Tex.Code Crim. Proc. Ann. art. 1.051(b) (defining "indigent" as "a person financially unable to employ counsel"). A trial court has no duty to appoint counsel when an indigent defendant has "managed to retain counsel" or "has made no showing of indigency." *Gray,* 744 S.W.2d at 607. As the trial court's handwritten notes denying retained counsel Goins's motion for a record of the first trial indicate, in addition to being represented by retained counsel (Justin) during the first trial, appellant was also represented by retained counsel (Goins) who filed the motion.

■ When the issue of indigency was raised, therefore, *see Tuck,* 215 S.W.3d at 415, appellant was not "financially unable" to retain counsel and, there-

fore, by definition, not indigent. *See* TEX. CODE CRIM. PROC. ANN. art. 1.051(b). As the trial court's "no evidence" notation further demonstrated, the motion lacked the requisite evidentiary showing to support a finding that appellant was indigent. *See Whitehead,* 130 S.W.3d at 874; *Abdnor,* 712 S.W.2d at 141–42.[5]

Based on the record and the foregoing principles, we lack any basis on which to conclude that the trial court acted irrationally or without regard for the controlling legal principles by denying appellant's request for a free transcription of his first trial. *See Newman,* 937 S.W.2d at 3–4; *Hornsby,* 65 S.W.3d at 804. We therefore conclude that the trial court did not abuse its discretion.

We overrule appellant's second issue.

## Conclusion

We affirm the judgment of the trial court.

Justice KEYES, dissenting.

EVELYN V. KEYES, Justice, dissenting.

I withdraw my dissenting opinion dated August 16, 2007 and issue the following opinion in its stead. I respectfully dissent. This case is about a conviction and 99–year sentence of an indigent defendant that was probably caused by the defendant's non-crime of hiring constitutionally deficient counsel. The majority takes the fact that appellant, who had been adjudicated indigent, discharged his appointed counsel and retained counsel for his retrial, and therefore could not pursue a free record of his

prior trial, as grounds for finding that appellant was not indigent for purposes of obtaining a free record and, therefore, has no complaint of ineffective assistance based on his counsel's failure to pursue a record for use at appellant's retrial. I would hold, on the basis of the same facts, together with the fact that appellant's retained counsel proved himself entirely unable to impeach the State's witnesses without the transcript of the prior mistrial, that appellant's counsel violated his professional duty to appellant by accepting and/or continuing representation for which he was constitutionally unqualified. Because appellant's trial counsel's actions, as reflected in the record, were in violation of his professional duty and prejudiced his client, and the result probably would have been different but for those actions, I would hold that appellant's counsel was ineffective as a matter of law. I would reverse and remand for a new trial.

## Background

This case grew out of a "sting" operation, in which the testimony of the arresting officers was critical to appellant's conviction. As the majority states, appellant was represented by retained counsel in his first trial, which ended in a mistrial declared on July 22, 2005. That attorney moved to withdraw on September 20, 2005, on the ground that appellant was "without funds to pay for another trial." On the same day, appellant's counsel filed an unverified motion in which he asserted that two police officers had testified at appellant's trial, and he requested a "record of

---

5. We distinguish *Abdnor v. State,* 712 S.W.2d 136, 142 (Tex.Crim.App.1986), in which the Court of Criminal Appeals concluded that a defendant's having retained counsel is not dispositive of a claim of indigency. *See also Ramadan v. State,* 89 S.W.3d 744, 746 (Tex. App.-Houston [1st Dist.] 2002, no pet.) (per curiam) (same). Both cases concern the right of a defendant to a free record *on appeal,* based on demonstrated indigency at that point in time, despite having retained counsel at trial. *Abdnor,* 712 S.W.2d at 138–39; *Ramadan,* 89 S.W.3d at 746.

that prior testimony to prepare for trial" on the ground that appellant was "without funds or resources to pay for a record." The trial court granted appellant's retained counsel's motion to withdraw that same day, but it did not rule on the motion he had filed requesting a free record.

A week later, on September 28, 2005, the trial court signed an order stating that appellant had "executed an affidavit stating that [he] is without counsel and is financially unable to hire an attorney," and it appointed counsel to represent appellant at his retrial. About a month later, on October 26, 2005, the trial court granted a request for appointment of an investigator also filed by appellant's appointed counsel on grounds of indigency. However, five days later, on November 1, 2005, the trial court granted appellant's motion that his appointed counsel be permitted to withdraw and that newly retained counsel, Steven Goins, be substituted. Goins became appellant's trial counsel as of that date and represented him throughout his retrial. It is Goins' representation that appellant challenges as ineffective.

On November 29, 2005, three weeks after he was retained and undertook appellant's defense for his retrial, Goins filed a motion asking that the trial court "provide the record of previous testimony" from the first trial. Goins' motion stated that appellant "is indigent" and that he, as counsel, sought to review the testimony from the first trial. Goins did not file an affidavit with the motion. Handwritten notations by the trial court in its order denying the motion state, "No evidence presented," and "Mr. Easily has retained counsel & previously had retained counsel." Goins represented appellant through the end of trial, without a record of appellant's previous mistrial. Appellant was convicted of possession of narcotics with intent to deliver and sentenced to 99 years in prison.

On the day the judgment in the retrial was signed, appellant filed a notice of appeal and requested and again obtained appointment of appellate counsel on the ground that he was indigent. Appellant continues to be represented by appointed counsel.

The record thus demonstrates that the trial court found that appellant was indigent on September 28, 2005, after the first trial, and again found that he was indigent on the day the retrial ended that is the subject of this appeal. *No countervailing evidence was presented to the court at any time* between the time appellant was adjudicated indigent after his mistrial and the time the retrial ended *that appellant, an incarcerated prisoner, had suddenly become not indigent* and that he was capable of hiring counsel without sacrificing his rights as an indigent to a free investigator and free record essential to his retrial. Rather, Goins assumed representation a week after his predecessor's motion for a free investigator had been granted and while his predecessor's motion for a free record was pending.

Goins promptly filed his own request for a record of the first trial, specifically informing the court that appellant *remained* indigent and was, therefore, entitled to a free record. However, having secured the representation and filed the request for a free record, Goins failed to follow up that request with the mandatory affidavit of indigency or with any other evidence that appellant was still indigent—evidence which only Goins, as appellant's counsel, could have presented to the trial court. Goins also failed either to assure that appellant paid for the record of his mistrial required for his defense or to resign so that appellant could obtain the free record to which he was entitled as an indigent. Consequently, Goins represented appellant at his retrial without a record of the previous mistrial, and with only appellant's

notes of the first trial with which to impeach the witnesses upon whose testimony appellant's conviction depended.

The only witnesses against appellant at his retrial were a chemist and two of the three undercover police officers who made the arrest.[1] Only one placed appellant in possession of the narcotics. At trial, Goins repeatedly attempted to impeach these witnesses by relying on the notes of the mistrial that he had obtained from his client. On each occasion, the State objected to the improper impeachment and the court sustained the objection. The following example from the cross-examination of Officer Hernandez, who participated in the sting, is illustrative:

Q. (BY GOINS) Earlier you testified that you arrived at the scene at 7:00 p.m.

A. Yes, sir.

Q. Okay. Just reading through this police report, I read 2000 hours. What time is that?

A. 8:00.

. . . .

Q. So, you couldn't have arrived at 7:00, could you?

A. We arrived about 7:00. The arrest was made somewhere about 8:00.

. . . .

Q. Okay. So, earlier, in a previous trial, you testified it was 8:00.

VINAS: Your Honor, may we approach?

COURT: You may.

(At the bench)

VINAS: Judge, at this point I'd object to improper impeachment and also to the Defense or any Defense witnesses mentioning the prior trial. That is irrelevant to this case, and there is no record of the prior trial.

Therefore, there won't be any statement to impeach the officer with.

COURT: Well, of course, if he has notes or a good faith basis maybe he said something contrary at the prior proceeding, he is entitled to ask about it. Do you have a copy of that record?

GOINS: I don't have a copy of the record, but I do have notes from the trial that my client has given me.

COURT: Okay. I think it is improper to mention a prior trial. You should just say at a prior hearing, did you testify to X and Y.

GOINS: No problem. Thank you.

(End of bench discussion)

Q. (BY GOINS) Again, at a prior hearing, why did you testify that you arrived at 8:00, or 2000 hours?

A. I really don't recall.

Q. Okay.

Similarly, the transcript reflects the following exchange during Goins' attempted cross-examination of Officer Hernandez, who had testified on direct examination that he had observed the transaction for which appellant was arrested through binoculars from across the street from where the three cars involved in the incident were parked. Officer Hernandez had testified that he had seen appellant exit one car, and "I believe he went to the blue vehicle first, met with the guy from the blue vehicle first," and that "I saw them meet and saw some kind of transaction. I really couldn't see the objects in their hands, but it looked like they were exchanging something." On cross-examination, Officer Hernandez identified the blue vehicle as "a four-door sedan." Goins then attempted to impeach him as follows:

---

1. One officer had been shot in an unrelated    case and did not testify.

Q. Okay. During the last hearing, it was said to be a blue Jeep. Blue Jeep. Does a blue Jeep look anything like a sedan?

VINAS: Objection, improper impeachment.

COURT: Sustained. Please approach.

(At the Bench)

COURT: Was that said by this witness?

GOINS: It was said by Officer Jordan several times.

VINAS: Improper impeachment.

COURT: State's objection is sustained.

GOINS: No problem.

When Officer Jordan testified, Goins attempted to impeach him on the same point:

Q. .... You can tell me what type of vehicle it was; am I correct?

A. It was just a blue vehicle. Blue. It wasn't a van. It wasn't a truck. It was a blue vehicle.

Q. If I'm correct, last time you testified it was a blue Jeep.

A. No. It—

Q. Yes.

VINAS: Objection, side-bar and improper impeachment.

COURT: Sustained. Sir, please just ask questions. Don't make comments.

Q. (BY GOINS) You testified to several questions that it was a blue Jeep. Why are you not saying it was a blue Jeep now?

A. I don't recall testifying a blue Jeep. I know for sure it wasn't a Jeep.

Appellant was convicted and sentenced to 99 years in the penitentiary for felony possession of dihydrocodeinone (Vicodin), after pleading true to two felony enhancements, one for possession of a controlled substance and one for possession with intent to deliver—despite the fact that the prosecutor recommended a maximum sentence of only 40 years. At appellant's prior trial the jury had deadlocked, eight to four, in favor of guilt.

**Ineffective Representation**

To meet his burden to show that his counsel was constitutionally deficient, an appellant is required to establish, by a preponderance of the evidence, that his trial counsel was not acting as "a reasonably competent attorney," and that his advice was not "within the range of competence demanded of attorneys in criminal cases." *See Ex parte Chandler,* 182 S.W.3d 350, 354 (Tex.Crim.App.2005) (quoting *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984)). He is also generally required to show that his counsel's constitutionally deficient performance prejudiced his defense, by demonstrating "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *See id.* at 354 (citing *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068) (to prevail on his claim of ineffective assistance of counsel, appellant must show that his counsel's performance was deficient and that there is "reasonable probability"—one sufficient to undermine confidence in the result—that outcome would have been different but for his counsel's deficient performance). The purpose of the constitutional requirement of effective counsel is to ensure a fair trial. *Ex parte Chandler,* 182 S.W.3d 350, 353 (Tex.Crim.App.2005).

However, a defendant who shows that an actual conflict of interest adversely affected the adequacy of his representation need not demonstrate prejudice to obtain relief. *Ex parte Acosta,* 672 S.W.2d 470,

474 (Tex.1984) (granting habeas corpus relief where defendant established actual conflict of interest); *see also Cuyler v. Sullivan,* 446 U.S. 335, 348–49, 100 S.Ct. 1708, 1718–19, 64 L.Ed.2d 333 (1980) (to demonstrate ineffective assistance of counsel based on conflict of interest, defendant must show that defense counsel was actively representing conflicting interests and that conflict had adverse effect on specific instances of counsel's performance); *Ramirez v. State,* 13 S.W.3d 482, 487 (Tex.App.-Corpus Christi 2000) (to prove adverse effect once actual conflict is established, appellant need not show that conflict changed outcome of trial), *pet. dism'd, improvidently granted,* 67 S.W.3d 177 (Tex.Crim.App.2001). When counsel is required to make a choice between advancing his client's interest in a fair trial or advancing other interests to the detriment of his client's interest, an actual conflict of interest exists. *Monreal v. State,* 947 S.W.2d 559, 564 (Tex.Crim.App.1997); *James v. State,* 763 S.W.2d 776, 779 (Tex. Crim.App.1989).

Here, the issue of Goins' ineffectiveness turns on whether his actions in accepting and continuing employment as appellant's retained counsel for appellant's retrial deprived appellant of his constitutional right to a transcript of his prior mistrial for use in his retrial, in breach of Goins' professional duty to appellant, and, if so, whether prejudice is presumed or whether, but for Goins' breach of his professional duties, the result of appellant's retrial probably would have been different. I would hold that appellant has shown that Goins' representation of him for his retrial was constitutionally ineffective and prejudiced the outcome.

When Goins undertook appellant's representation, appellant had been adjudicated indigent, had been granted a free investigator, and was seeking a free record

through his appointed counsel. The Equal Protection Clause of the Fourteenth Amendment requires that the State provide an indigent criminal defendant a transcription of testimony from a previous proceeding if it is needed for an effective defense. *Britt v. North Carolina,* 404 U.S. 226, 227, 92 S.Ct. 431, 433, 30 L.Ed.2d 400 (1971). The interest protected ensures that the trial a person obtains is not determined by "the amount of money he has." *Id.* at 231, 92 S.Ct. at 435 (Douglas, J., dissenting) (quoting *Griffin v. Illinois,* 351 U.S. 12, 19, 76 S.Ct. 585, 591, 100 L.Ed. 891 (1956)). As the Supreme Court stated in *Britt,*

> Our cases have consistently recognized the value to a defendant of a transcript of prior proceedings, without requiring a showing of need tailored to the facts of the particular case.... [E]ven in the absence of specific allegations it can ordinarily be assumed that a transcript of a prior mistrial would be valuable to the defendant in at least two ways: as a discovery device in preparation for trial, and as a tool at the trial itself for the impeachment of prosecution witnesses.

404 U.S. at 228, 92 S.Ct. at 434.

In *White v. State,* the Texas Court of Criminal Appeals agreed with *Britt,* as it had in earlier cases, and extended the constitutional right to the opportunity to obtain a transcript of prior testimony from a mistrial for use in a retrial to all criminal defendants. *See White v. State,* 823 S.W.2d 296, 299–300 (Tex.Crim.App.1992) (holding that trial court's denial of motion for continuance to allow defendant to obtain transcript of prior mistrial was harmful error requiring reversal). The court reasoned:

> When presented with the denial of an indigent defendant's right to a transcript of prior testimony, this Court has echoed *Britt's* constitutional mandate.

In *Billie v. State*, 605 S.W.2d 558 (Tex. Crim.App.1980), we held that *the denial of such a transcript was reversible error even though the defendant successfully impeached the State's key witness through defense counsel's personal notes from the first trial.* Although this impeachment ultimately forced the prosecution to stipulate to certain inconsistencies, we stated: "[W]ithout a transcription of the court reporter's notes from the initial trial, there was no viable way of knowing *just how many more* inconsistencies existed for impeachment purposes." *Id.* at 560 (emphasis in original).

Similarly, in *Armour v. State*, 606 S.W.2d 891 (Tex.Crim.App.1980), we found reversible error in the trial judge's denial of the defendant's motion for a continuance, when such motion had been prompted by the judge's refusal to rule on the defendant's request for a transcript from the defendant's earlier mistrial.... Again relying on *Britt*, we found [allowing the court reporter to read at length from the notes of the earlier trial in an attempt to impeach the witness] an inadequate alternative to providing a defendant with the actual transcript of the earlier trial. In addition, we extended our earlier holding in *Billie* [*v. State*, 605 S.W.2d 558, 560 (Tex.Crim.App.1980),] by expressly requiring the State to prove that the defendant had no need for a transcript of the prior testimony of the State's witnesses in order to present an effective defense. *Id.* at 894.

*Id.* at 299 (emphasis added).

*White* was virtually identical to this case in that it involved a sting operation in which there had been a prior mistrial of

the defendant and "the ability of the State to obtain a conviction rested almost exclusively on the testimony of the ... law enforcement personnel involved in the alleged drug transaction." *Id.* at 300. The "credibility and perceptions" of the officers who testified at both trials being essential to the State's case, it was "thus paramount that appellant have the means to adequately impeach these witnesses." The Court of Criminal Appeals held, in *White*, that, because this testimony provided the basis for establishing the elements necessary to convict the appellant, inhibiting the appellant's ability to impeach those witnesses through their specific prior testimony "unconstitutionally impaired appellant's defense." *Id.* The Court further held that denying a continuance to allow the defendant to obtain the transcript of the prior proceeding was reversible error in the absence of proof by the State that the defendant did not need the transcription. *Id.* at 300. It had previously concluded in *Billie* that court-reporter "readbacks" are not a sufficient alternative to the transcription of actual proceedings, and it reaffirmed that holding in *White*.[2] *Id.* at 299–300; *see also Billie*, 605 S.W.2d at 560.

Under *Britt*, it is reversible error to deny an indigent defendant a free transcript of a prior mistrial of the same case. Under *White*, it is reversible error to deny *any* criminal defendant the right to obtain a record of his previous mistrial when it is necessary to impeach the State's witnesses, specifically including a case like this one, in which the defendant's conviction turns on the credibility of the officers who testify against him, whether the defendant is indigent or not.

---

2. In this case, all Goins had to rely on from the prior trial were his notes from his conversations with appellant.

The majority in this case reasons, however, that appellant was *not* indigent solely because he hired Goins; therefore, he had no right to a *free* transcript, and Goins was not ineffective for not seeking one. The majority misses the critical issue, namely, whether appellant's right to obtain the transcript of the prior trial that was essential to a constitutionally adequate defense was violated by Goins' actions—namely, by Goins' taking on representation and causing the withdrawal of appointed counsel without assuring himself that appellant would still be able to obtain the record of his mistrial, filing but failing to pursue a request for a free transcript on the ground that appellant was indigent, and then proceeding to represent appellant in his retrial without a transcript that was critical to a constitutionally adequate defense. *See White*, 823 S.W.2d at 300 (stating that issue is whether lack of transcript "unconstitutionally impaired appellant's defense").

The majority also concludes that Goins had an adequate alternative to the transcript of the prior mistrial, namely, "the notes made by appellant on which trial counsel relied to cross-examine the officers." 248 S.W.3d at 280. The majority states, "As the record demonstrates, trial counsel utilized that alternative and probed the testimony of the officers in the first trial. However unsuccessful appellant deems his trial counsel's cross-examination and impeachment of the officers, the record reflects that meaningful cross-examination to impeach their testimony occurred. Accordingly, the purpose behind obtaining the record of the first trial was attained, albeit from appellant's notes." *Id.* Respectfully, I must disagree with the majority's characterization of the record and the conclusion drawn from it. My own examination of the record, reflected in part by the portion of the record recited above, finds *no* instance in which

Goins was able to impeach the testifying officers on *any* matter with *any* prior testimony—even on matters as critical to appellant's defense as the time of the arrest, the vehicles involved in the incident, and (in a portion of the record not recited above) the side of the vehicle from which the drug transaction was alleged to have taken place, which was critical to determine who actually delivered the drugs. Indeed, Goins' efforts at representing appellant are riddled with the State's objections to improper cross-examination, with remonstrances from the trial court to Goins regarding his conduct, and with Goins' incorrect and futile attempts at cross-examination.

There is no question that appellant would have been entitled to a free record of his prior trial as an indigent had he pursued one appropriately. As the majority observes, it is axiomatic that an indigent criminal defendant is entitled to a free record, but "only sworn allegations are to be considered in determining whether a defendant is entitled to a free record." *Whitehead v. State*, 130 S.W.3d 866, 873–74 (Tex.Crim.App.2004) (citing Tex.R.App. P. 20.2). The criminal defendant claiming indigency as the basis for obtaining a free record must, therefore, exercise due diligence in asserting indigency, including timely filing an affidavit of indigency and sustaining indigency claims in the affidavit. *Abdnor v. State*, 712 S.W.2d 136, 141–43 (Tex.Crim.App.1986). The defendant bears the initial burden to substantiate his own allegation of indigency. *Id.* Once he meets his burden of production, the burden shifts to the State to produce evidence that the defendant is not indigent. *Id.* The trial court must then determine the appellant's financial status. *Id.* Unless an outside source is legally bound to pay, that outside source, such as parents or relatives, may not be considered by the

trial court in the determination of indigency. *Id.* Nor may a defendant be deprived of a free record simply because he was represented by retained counsel in a previous proceeding. *Id.* Indigency determinations are made on a case-by-case basis, and any attempt by a court to set rigid standards will not be accepted. *Ramadan v. State,* 89 S.W.3d 744, 746 (Tex.App.-Houston [1st Dist.] 2002, order) (per curiam). A defendant whom the trial court has determined to be indigent "is presumed to remain indigent for the remainder of the proceedings in the case unless a material change in [his] financial circumstances occurs." TEX.CODE CRIM. PROC. ANN. art. 26.04(p) (Vernon Supp.2006). Article 1.051(b) of the Code of Criminal Procedure defines an "indigent" person for purposes of trial as "a person who is not financially able to employ counsel." *Id.* art. 1.051(b) (Vernon 2005).

Here, when Goins undertook appellant's representation, replacing appellant's appointed counsel, appellant had been adjudicated an indigent; trial counsel had been appointed for him; appointed counsel's motion for an investigator had been granted; and a motion for a free record had been filed. Goins himself then filed a motion for a free record, representing to the court that his client was indigent. However, because appellant was statutorily defined as not indigent, due solely to his retention of Goins, Goins could not ethically file an affidavit to show the trial court that appellant was still indigent, that no material change had occurred in his finances, and that he was constitutionally entitled to a free record of his prior trial for his defense without sacrificing his own pecuniary interest in the representation— as Goins, as a licensed criminal defense attorney, necessarily knew or should have known. Thus, no evidence regarding appellant's financial abilities was presented to the trial court. Nor was Goins able to present an adequate defense without the transcript he failed to obtain, as demonstrated by the record.

The Rules of Professional Conduct are very clear as to the duties Goins breached.

First, Goins' motion for a free record of appellant's prior trial plainly states that appellant "is indigent." If appellant was *not* indigent when the statement was made, this statement was *false,* Goins knew it to be false, and thus he knowingly violated Texas Disciplinary Rule of Professional Conduct 3.03(a)(1) (prohibiting a lawyer from making a false statement of material fact to a tribunal). TEX. DISCIPLINARY R. PROF'L. CONDUCT 3.03(a)(1).

If Goins' statement to the court that appellant was indigent at the time of his retrial was *true,* Goins violated his professional duty by undertaking representation knowing that his client's interest in obtaining a free investigator and a free record essential to an adequate defense would be adversely limited by Goins' own pecuniary interest in the representation. Rule of Professional Conduct 1.06 provides that "a lawyer shall not represent a person if the representation ... reasonably appears to be or become adversely limited by ... the lawyer's or law firm's own interests." *Id.* at 1.06(b)(2). Comment 1 to Rule 1.06 states, "Loyalty is an essential element in the lawyer's relationship to a client. An impermissible conflict of interest may exist before representation is undertaken, in which event the representation should be declined." *Id.* at cmt. 1. Comment 5 states that "[t]he lawyer's own interests should not be permitted to have adverse effect on representation of a client" and "a lawyer's need for income should not lead the lawyer to undertake matters that cannot be handled competently and at a reasonable fee." *Id.* at cmt. 5.

Whether appellant was indigent or not, Goins further violated his professional duty to appellant by failing to obtain a transcript of the prior trial that he knew was essential to a constitutionally adequate defense. Rule 1.01 provides that "[a] lawyer shall not accept or continue employment in a legal matter which the lawyer knows or should know is beyond the lawyer's competence" and that he "shall not ... neglect a legal matter entrusted to [him]." *Id.* at 1.01(a), (b). "Neglect" is defined as "inattentiveness involving a conscious disregard for the responsibilities owed to a client or clients." *Id.* at 1.01(c). Goins' failure to exercise the due diligence required to obtain a record of appellant's previous trial that was critical to a constitutionally adequate defense at appellant's retrial can only be characterized as unprofessional neglect of the legal matters entrusted to him.

It is impossible to see how appellant's constitutional interest in a fair trial was not adversely affected by Goins' actions. If Goins did not know the transcript was necessary for a constitutionally adequate defense, he was professionally unqualified to represent appellant. If he did know, and neither obtained a transcript nor relinquished the representation, knowing that appellant was still indigent and was entitled to a free transcript, he breached his duty of loyalty and placed his own pecuniary interests in the representation ahead of his client's interest in having a adequate defense. Either way, Goins' breach of his professional duty to his client was not "within the range of competence demanded of attorneys in criminal cases" and, therefore, violated the first prong of

*Strickland.* *Ex parte Chandler*, 182 S.W.3d at 354 (quoting *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064).[3] Moreover, having failed to obtain a transcript, Goins proved himself utterly unable to impeach the testimony of the officers upon whose testimony and credibility appellant's conviction depended—this in a case in which the only witnesses against appellant, other than the chemist, were the two undercover police officers involved in the sting, and this following a prior mistrial in which four of the twelve jurors had voted to acquit appellant.

If Goins intentionally sacrificed the constitutional rights of his client to his own pecuniary interests, his representation was inadequate as a matter of law and prejudice is presumed. *See Cuyler*, 446 U.S. at 348–49, 100 S.Ct. at 1718–19; *Ex parte Acosta*, 672 S.W.2d at 474; *White*, 823 S.W.2d at 299–300. Even if inadequate representation is not presumed, however, there is still a reasonable probability that, but for Goins' breaches of his professional duty to appellant, the result of the retrial would have been different. The first trial was a mistrial in a sting operation. It resulted in a retrial using the same witnesses. Those same witnesses were able to testify in the second trial without fear of impeachment by their past testimony because Goins failed to assure that his client obtained a constitutionally mandated transcript of his prior mistrial. In addition, with Goins as his attorney, and without a transcript to use for impeachment, appellant was sentenced to an extremely harsh maximum 99–year sentence for the nonviolent crime of possession of a controlled substance with intent to deliver.[4] Thus, as

---

3. Goins' failure to pursue a record of appellant's prior trial cannot be attributed to "trial strategy," because no reasonable trial strategy can justify his actions.

4. Because appellant had two prior convictions, one for possession of a controlled substance and one for possession with intent to deliver, he faced a mandatory sentence of 25

a result of Goins' representation, appellant suffered a sentence 59 years longer than even the maximum recommended by the prosecution, satisfying the prejudice requirement in the second prong of *Strickland.* *See Chandler,* 182 S.W.3d at 353–54 (citing *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068).

I would hold that appellant proved the ineffectiveness of his trial counsel, Goins, as a matter of law. Therefore, I would reverse appellant's conviction and remand for a new trial.

A motion for rehearing was requested. *See* Tex.R.App. P. 49.1.

A majority of the panel denied rehearing.

En banc reconsideration was also requested. *See* Tex.R.App. P. 49.7.

A majority of the Court voted to DENY en banc reconsideration.

years to life in prison or 99 years. *See* Tex. Pen.Code Ann. § 12.42 (Vernon Supp.2006).