In The

Court of Appeals

For The

First District of Texas

____________


NO. 01-08-00606-CR

NO. 01-08-00607-CR

NO. 01-08-00608-CR

____________


JACOB TIMOTHY GALLEGOS, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the 262nd District Court 

Harris County, Texas

Trial Court Cause Nos. 1142177, 1142176, 1142175





MEMORANDUM OPINION



 Appellant, Jacob Timothy Gallegos, pleaded guilty, without an agreed
recommendation from the State, to two second-degree felony offenses of
intoxication manslaughter and to a third-degree felony offense of intoxication
assault. The punishment hearing before the trial court resulted in a prison sentence
of 20 years for each intoxication manslaughter case and ten years for the
intoxication assault case, to run concurrently. In a single point of error, appellant
contends that his trial counsel was ineffective during the punishment hearings for
each of his convictions. We affirm. 

Background Facts

 On November 16, 2007, at approximately 10 p.m., appellant ran a red light
at an intersection. He was driving "at least" 20 miles per hour over the speed limit
when he collided with a vehicle carrying Scott Griffith, Carrie Cleaver, and
Timothy Frazier. The impact of the vehicles was sufficient to eject one of the
passengers, and one of the car's tires broke from its axle and landed 75 feet away. 
Griffith and Frazier died at the scene before police arrived. Cleaver suffered a
traumatic brain injury, a collapsed lung, an aortic dissection, multiple breaks in her
pelvis, nine broken ribs, and loss of her spleen. 

 Appellant contends that his trial counsel was ineffective during the
punishment hearing because he did not challenge the admissibility of recorded
telephone calls that appellant made from jail, which the State used to impeach
appellant's testimony. 

 During cross-examination of appellant, the prosecutor asked appellant if he
planned to pay the $4,000 in medical expenses incurred when appellant was
hospitalized on the night of the accident. When appellant replied, "If I can, I will,"
the prosecutor asked if appellant remembered telling someone that he would never
pay "any of that ever," and appellant stated, "If I'm locked up forever, how can I
pay it?" The prosecutor then asked if appellant remembered saying "that they can
kiss your ass?" After appellant denied saying that, the prosecutor asked appellant
again if he remembered saying that, and then played an audio recording. (1) 

 At a later point in cross-examination, appellant replied to a question from the
prosecutor by describing the accident as having "had a major effect" on his life, the
prosecutor asked if appellant remembered describing the accident as "a minor
setback" in his life. Appellant disagreed and replied that he had actually said that
the accident was "a minor setback for a major comeback, meaning when I do get
out that I would remain [sic] to do what I was doing before I got locked up, which
is working." At that point, the following exchange occurred:

 PROSECUTOR: So, the fact that you killed two people, and nearly
killed Carrie Cleaver, but for the grace of the
doctor [who] came in here and talked about saving
only 20 percent of people that have that injury,
that's a minor setback?


 APPELLANT: No, that's a miracle. 


 PROSECUTOR: In fact, other people while you've been in jail have
recognized what a tragedy it has been, and you still
refuse to recognize it; isn't that true?


 APPELLANT: No, I recognize it.


The prosecutor then played another audio recording. Appellant agreed that he was
speaking to his "grandma" in the recording and that she understood "what a
tragedy this is," whereupon the following exchange took place:

 PROSECUTOR: And back when you were talking about probation,
I'm going to get probation, but I don't want
probation with a monitor because I want to still be
able to drink; you were saying that too, right?


 APPELLANT: Yes.


 PROSECUTOR: But she was saying to you, you're not going to get
probation. You've killed some people. She's the
one that understands exactly what you did. But
you didn't. You said all you lost is a car. Did you
hear that?


 DEFENSE COUNSEL: Judge, I withdraw it, Judge.

 

 PROSECUTOR: Did you hear that?


 APPELLANT: Yeah, I heard that.


 PROSECUTOR: She said, no, you lost more than a car. You said,
no big deal. I'll get another nice car.


 APPELLANT: Because we were talking about my car.


 The prosecutor then asked appellant if he remembered joking with a person
identified as his "shoe contact," stating, "You guys were joking about the whole
accident, like it's no big deal. Do you need me to play it?" This time appellant
replied, "No," and the following exchange occurred:

 PROSECUTOR: You were pretty impressed with that Mercedes
Benz, weren't you?

 

 APPELLANT: Yes, it was my first vehicle.


 PROSECUTOR: And the fact that you wrecked it, when you were in
jail, that's all you were thinking about. That's all
you really thought about was, oh well, I wrecked
my car, no big deal, right?


 APPELLANT: Nope.


Then the prosecutor played an audio recording and, apparently quoting appellant's
language on the record, asked the following:

 "Yeah, I f------ up my car, but oh well." That's what you said. You
remember that? Do you remember when [your wife] tells you you're
not getting another nice car, and you start telling her about getting a
Porsche, that's what you want next. You remember that?" 


Appellant's counsel then stated a relevancy objection, but was overruled. After
three intervening questions about appellant's being away from his son because he
was in jail, the prosecutor asked appellant, "So if you could get out of jail for just
one day, just one day, what would you do?" When appellant replied, "I'd spend
time with my family," the prosecutor played the audio recording again, after which
the following exchanges took place:

 PROSECUTOR: So back when you were in jail - like up here, it's easy to
say I'd spend time with my son. But when you're in jail
telling the truth, you tell [appellant's wife] you'd rather
go to the Jay-Z concert. If could get out of jail for one
day, any day, Jay-Z is what you would want to go to do,
right?


 APPELLANT: It was on that night.


 PROSECUTOR: So, I mean what type of father - you know, you heard
[appellant's wife] and your mom say you're such a great
father. What kind of father do you think you've been to
him?


 APPELLANT: Not a good father.


 PROSECUTOR: You've taken out of his piggy bank before, right?


 APPELLANT: I took out of his piggy bank to take care of stuff. And I
put back in his piggy bank and then some.


[Audio recording played]



 PROSECUTOR: So, [appellant's wife] reports that you had - he had $150
in his piggy bank[,] and now he's only got about 30 or 40
bucks left. What kind of drugs do you deal?


 APPELLANT: I don't do any drugs.


 PROSECUTOR: Didn't you ever deal drugs around [appellant's son]? 
Sir?


 APPELLANT: Not that I recall.


[Audio recording played]



 PROSECUTOR: [Appellant's wife] says, "I don't want you selling that 

 s--- around [appellant's son], but you did it anyways." 
You remember biting his finger and laughing about it? 
Sir?


 APPELLANT: I do remember.


 PROSECUTOR: What are you going to do when you get out of jail?


 APPELLANT: Tend to my family.


[Audio recording played]



 PROSECUTOR: Pass the witness.


Ineffective Assistance of Counsel at Punishment Hearing


A. Standard of Review

 The "benchmark for judging any claim of ineffectiveness must be whether
counsel's conduct so undermined the proper functioning of the adversarial process
that the trial cannot be relied on as having produced a just result." Strickland v.
Washington, 466 U.S. 668, 686, 104 S. Ct. 2052, 2064 (1984). Strickland
establishes a two-part test for claims of ineffectiveness of counsel. First, the
performance must be deficient to the level that counsel made errors so serious that
counsel was not functioning as the "counsel" guaranteed to the defendant by the
Sixth Amendment; second, the defendant must show that the deficient performance
prejudiced the defense. Id. 466 U.S. at 687, 104 S. Ct. at 2064. Counsel's errors
must have been so serious as to deprive the defendant of a fair trial, and there is a
reasonable probability that, but for the counsel's unprofessional errors, the result
would have been different. Id., 466 U.S. at 694, 104 S. Ct. at 2068. 

 There is a strong presumption that counsel's conduct fell within the wide
range of reasonable professional assistance, and the defendant must overcome the
presumption that the challenged action might be considered sound trial strategy. 
Id., 466 U.S. at 689, 104 S. Ct. at 2065. To overcome the presumption of
reasonable professional assistance, "any allegation of ineffectiveness must be
firmly founded in the record, and the record must affirmatively demonstrate the
alleged ineffectiveness." Thompson v. State, 9 S.W.3d 808, 814 (Tex. Crim. App.
1999). When determining the validity of an ineffective assistance of counsel
claim, judicial review must be highly deferential to trial counsel and avoid the
deleterious effects of hindsight. Ingham v. State, 679 S.W.2d 503, 509 (Tex. Crim.
App. 1984). When the record is silent as to the reasons for counsel's conduct, a
finding that counsel was ineffective would normally require impermissible
speculation by the appellate court. Stults v. State, 23 S.W.3d 198, 208 (Tex.
App.--Houston [14th Dist.] 2000, pet. ref'd). When there are no explanations for
specific decisions by counsel, the record on direct appeal will rarely contain
sufficient information to evaluate an ineffective assistance claim. See Bone v.
State, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). 

 "[W]hen no reasonable trial strategy could justify trial counsel's conduct,"
however, counsel's performance may fall below an objective standard of
reasonableness as a matter of law, "regardless of whether the record adequately
reflects trial counsel's subjective reasons for acting as he did." Andrews v. State,
159 S.W.3d 98, 102 (Tex. Crim. App. 2005). 

 But, even if a criminal defendant can prove trial counsel's performance was
deficient, he must still affirmatively prove that he was prejudiced by counsel's
actions under the second prong of the Strickland test. See Thompson, 9 S.W.3d at
812. This requires that the defendant demonstrate a reasonable probability that the
result of the proceeding would have been different if trial counsel had acted
professionally. Id. "A reasonable probability is a probability sufficient to
undermine confidence in the outcome." Mallett v. State, 65 S.W.3d 59, 63 (Tex.
Crim. App. 2001).

B. Discussion

 Appellant argues that his trial counsel should have (1) challenged the
legality of the State's possession of the tape recordings, (2) objected to the
recordings's being played without proper authentication, (3) inspected the tape
recordings after they were played, (2) and (4) objected to the State's failure to follow
proper procedure for impeaching a witness with a prior inconsistent statement. 

 Appellant did not move for a new trial. Therefore, there is no record of a
hearing record at which trial counsel could explain why he did not object to the
playing of the telephone recordings. When the record is silent regarding counsel's
reasons for failing to do what the defendant contends should have been done, we
should not find deficient performance unless the challenged conduct was "so
outrageous that no competent attorney would have engaged in it." Goodspeed v.
State, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005). Appellant argues that his trial
counsel's performance meets this standard. We disagree.

 Appellant's contentions assert a multi-pronged challenge to the
impeachment by the prosecutor with appellant's prior inconsistent statements
contained in audio recordings made while appellant was in jail. Counsel does not
render ineffective assistance by not objecting to evidence that is admissible. 
McFarland v. State, 845 S.W.2d 824, 846 (Tex. Crim. App. 1992).

 Well-settled law recognizes that statements made by an accused while
incarcerated are admissible, on the grounds that an accused has no legitimate
expectation of privacy, the loss of which is an inherent incident of confinement. 
State v. Scheineman, 77 S.W.3d 810, 812 (Tex. Crim. App. 2002) (citing Hudson v.
Palmer, 468 U.S. 517, 525-26, 104 S. Ct. 3194, 3200 (1984); Bell v. Wolfish, 441
U.S. 520, 537, 99 S. Ct. 1861, 1873 (1979)). 

 Likewise, rule 613(a) of the Rules of Evidence codifies common-law
precedents that rendered a prior statement of a witness admissible if the statement
conflicts with the testimony of the witness and the witness denies making the prior
statement. Tex. R. Evid. 613(a); McGary v. State, 750 S.W.2d 782, 786 (Tex.
Crim. App. 1988). Rule 613(a) also continues the common-law requirement that
the proponent of the inconsistent statement must first inform the witness of the
time and place of the statement and the person to whom the witness made the
statement. Irizarry v. State, 916 S.W.2d 612, 616 (Tex. App.--San Antonio 1996,
pet. ref'd). The prior statement is not admissible unless the witness denies making
it, see Linder v. State, 828 S.W.2d 290, 299 (Tex. App.--Houston [1st Dist.] 1992,
pet. ref'd), and the witness must have an opportunity to explain or deny the prior
statement. Tex. R. Evid. 613(a). Rule 613(a) should be liberally construed to
ensure that the trial judge has discretion to receive any evidence that promises to
expose a falsehood. See Aranda v. State 736 S.W.2d 702, 707 (Tex. Crim. App.
1987) (interpreting common-law rule). Statements need not be explicitly
contradictory to be in conflict, therefore, and an inconsistency between testimony
and a prior statement may arise from an evasive answer or feigned inability to
remember. See United States v. Bigham, 812 F.2d 943, 946-47 (5th Cir. 1987). 

 As the excerpts from the trial record set out above demonstrate, the
prosecutor relied on an audio recording of appellant's jailhouse conversations that
were admissible to impeach his veracity and his claims that he fully understood the
seriousness of his crimes and firmly intended to reform and focus on his family. 
The prosecutor played the audio recording seven times. In every instance, the
prosecutor played the audio recording after appellant denied, disputed, or
equivocated about making a prior inconsistent statement. 

 The record also shows that when the prosecutor asked appellant if he joked
with his "shoe contact" about the car accident as if it were "no big deal," appellant
did not dispute the statement. Instead, appellant agreed and replied that the
prosecutor did not have to play the tape. In accordance with rule 613(a), no further
question was proper and none was asked. See Tex. R. Evid. 613(a); Linder v.
State, 828 S.W.2d at 299. 

 Just before that exchange between appellant and the prosecutor, the record
indicates that appellant's counsel withdrew an objection. The record does not
capture the initial objection asserted. Close inspection of the preceding colloquy
between the prosecutor and appellant shows that appellant responded "yes" to the
prosecutor's inquiring whether appellant had stated he did not want "probation
with a monitor" because he wanted to be able to drink. The prosecutor
immediately asked another question. This second question asked whether
appellant had stated that all he lost was a car and therefore did not "understand[ ]
exactly what [he] did." At that point, appellant's counsel withdrew his objection. 
Appellant's counsel properly withdrew that objection because the prosecutor's
question was further impeachment of appellant's prior testimony that he fully
understood the seriousness of his crimes.

 The portions of the record excerpted do not support a claim of ineffective
assistance. Rather, they indicate that trial counsel was aware that appellant's
jailhouse statements were admissible and that trial counsel closely monitored the
prosecutor's questions for compliance with Tex. R. Evid. 613(a). Trial counsel
does not render ineffective assistance by not objecting to evidence that is
admissible. See McFarland, 845 S.W.2d at 846. 

 The record also shows that trial counsel conducted extensive cross-examination of police officers regarding the nature and content of appellant's
conversations with family members or others whom the speaker might know well,
which could appear cavalier when overheard. Trial counsel was attentive to the
evidence throughout the hearing, asserted several successful objections, offered
mitigating evidence, through testimony by appellant's girlfriend and "adopted"
mother, who acknowledged appellant's efforts to better himself and to be a good
father to his son, and referred to the recordings in his closing arguments to the
court in an effort to defuse their effect. 

 We hold, therefore, that appellant has failed to establish the threshold first
prong of the Strickland test under the record presented. See Easily v. State, 248
S.W.3d 272, 280 (Tex. App.--Houston [1st Dist.] 2007 pet. ref'd). We overrule appellant's issue. 


Conclusion


 We affirm the judgments of the trial court.






 Sherry Radack


 Chief Justice


Panel consists of Chief Justice Radack and Justices Alcala and Hanks.


Do not publish. Tex. R. App. P. 47.2(b)

1. The record does not reflect the content of the portion played or the contents of any
audio recordings played during the punishment trial. Much of the content can be
inferred from the prosecutor's questions that follow the audio recordings, however. 
2. Appellant's contention refers to the "use before the jury" rule, which entitles a
defendant to "inspect, upon timely request, any document, instrument, or statement"
that the State uses "before the jury" in a manner that its contents become an issue. 
Hoffpauir v. State, 596 S.W.2d 139, 141 (Tex. Crim. App. 1980). There was no jury
in this case, in which appellant pleaded guilty to three offenses, and punishment was
tried to the court.