Kenneth TUCK, Appellant,

v.

The STATE of Texas.

No. PD–0220–06.

Court of Criminal Appeals of Texas.

Feb. 7, 2007.

Keith S. Hampton, Austin, for Appellant.

Michael Scott Taliaferro, Matthew Paul, State's Atty., Austin, for State.

## OPINION

PRICE, J., delivered the opinion for a unanimous Court.

This case presents the question whether a defendant, in establishing indigency for purposes of procuring a free appellate record, must prove the reasonableness of his expenses and financial obligations in order to obtain a free record for appeal. We conclude, as did the court of appeals in this case, that an inquiry into the reasonableness of a defendant's expenses and financial obligations is relevant in determining whether a defendant is indigent and unable to pay or give security for the appellate record. Nevertheless, we vacate the court of appeals' decision and remand to the trial court.

### THE FACTS AND PROCEDURAL POSTURE

The appellant was convicted of theft over $20,000 and sentenced to five years in

prison. The trial court suspended the sentence and placed the appellant on community supervision for ten years. After trial, the appellant timely filed a notice of appeal and motion for new trial. Subsequently, the appellant filed a motion for a free appellate record with an affidavit of indigency. The trial court held a hearing on the appellant's motion.

At the indigency hearing conducted on May 18, 2004, the appellant testified on his own behalf. On cross-examination, the appellant stated he earned approximately $450 per month, paid $540 a month for a 1997 Suburban, and rented an apartment for $950 a month. The appellant further testified that he had borrowed money from his brother the last couple of months in order to pay for his expenses. He was unsure, however, how long he would be able to continue borrowing money from his brother. When questioned about other financial assets, such as stocks and savings accounts, the appellant responded that his only asset was a bank account that contained $100. At the conclusion of the cross-examination, the prosecutor stated the cost of the appellate record would be $2,100 for the transcript and estimated an additional $500 to $700 cost for three boxes of exhibits. After hearing the testimony of the appellant, the trial judge determined that the testimony and affidavit did not provide enough information to make a ruling on the appellant's indigency motion. The trial judge ordered the appellant to fill out an information form on indigency and to provide additional information on his financial status.

Pursuant to the trial court's instruction, the appellant filed an indigence form and an addendum that included a two-week pay stub and income tax return for 2003. On the indigence form, the appellant claimed his total income per month was $1,200 and total necessary expenses per month were $1,790. The appellant's total income was divided into two sources: 1) $600 of appellant's own earnings, and; 2) $600 of other funds. The trial judge decided the appellant had not established his indigency and denied him a record at public expense.

On appeal to the Third Court of Appeals, the appellant argued the trial court abused its discretion by denying him a free appellate record. The appellant alleged that he made the requisite prima facie showing of indigence, and that this showing went unrefuted by the State. In a memorandum opinion, the court of appeals held "the [trial] court could have reasonably believed that some of appellant's expenses—specifically the $950 rent and $540 car payment—were unnecessarily high. The court could reasonably expect a person claiming a monthly income of $1200 to find less expensive housing and means of transportation, and to use the money saved to pay the court reporter." [1]

Appellant filed his petition for discretionary review, which we granted to examine the issue of whether a defendant must prove the reasonableness of his expenses and financial obligations in order to obtain a free record for appeal.

## ANALYSIS

 In the context of entitlement to a free appellate record, an indigent defendant is defined as one who "cannot pay or give security for the appellate record." [2] It is well established that the determina-

1. *Tuck v. State*, No. 03–04–00177–CR, 2005 WL 3076918, at *2, 2005 Tex.App. LEXIS 9677, at *4 (Tex.App.-Austin Nov.17, 2005, pet. granted) (not designated for publication).

2. TEX.R.APP. P. 20.2.

tion of indigency is made on a case-by-case basis.[3] Furthermore, this determination is made at the time the issue is raised, as opposed to a prior or future point in time.[4] Specifically, determining indigence for a free appellate record is "a matter of financial status at the time of appeal, not at the time of trial." [5]

 A two-step process must be satisfied in order for a defendant to obtain indigent status and receive a free appellate record: 1) the defendant must make a prima facie showing of indigence, and 2) once a prima facie showing is made, the State then carries the burden to refute this showing and prove the defendant is not indigent.[6] In reviewing the evidence, a trial court cannot simply disregard evidence of indigence without reason.[7] Rather, unless there is a reasonable, articulable basis in the record to discount it, a trial court must accept the defendant's evidence as true.[8] The Legislature has articulated various factors to be considered when making a prima facie showing. The pertinent statutory language reads:

In determining whether a defendant is indigent, the court or the courts' [sic] designee may consider the defendant's income, source of income, assets, property owned, outstanding obligations, necessary expenses, the number and ages of dependents, and spousal income that is available to the defendant.[9]

As stated in the statute, two relevant factors in determining indigence are "outstanding obligations" and "necessary expenses." It is clear from the statute that the Legislature accepted these factors as relevant to an indigency assessment. In the case at hand, we are not asked to decide whether a defendant's expenses can be considered; rather we must decide whether it is appropriate for a trial court to consider the reasonableness of a defendant's expenses and financial obligations in deciding whether a defendant made a prima facie showing of indigence.

 The controversial expenses in this case are the appellant's $950 monthly rental payment and $540 monthly car payment.

3. *Whitehead v. State,* 130 S.W.3d 866, 874 (Tex.Crim.App.2004); *Castillo v. State,* 595 S.W.2d 552, 554 (Tex.Crim.App.1980).

4. *Whitehead,* 130 S.W.3d at 874.

5. *Castillo,* 595 S.W.2d at 554; *see also Abdnor v. State,* 712 S.W.2d 136, 141 (Tex.Crim.App. 1986) (reiterating that indigency is determined by a defendant's financial status at the time of appeal, not at the time of trial). During the indigency hearing, the State claimed that the appellant made a substantial amount of money at one time. Whether true or not, past financial status is not determinative of whether the appellant is indigent.

6. *Whitehead,* 130 S.W.3d at 874; *Snoke v. State,* 780 S.W.2d 210, 213 (Tex.Crim.App. 1989).

7. *Compare Whitehead,* 130 S.W.3d at 875 ("[T]he trial court does not have the nearly unfettered discretion seen in other contexts to

simply disbelieve the defendant's evidence of indigence.... [A] trial court should accept the defendant's evidence absent some reason in the record for not doing so."), *with State v. Ross,* 32 S.W.3d 853, 857 (Tex.Crim.App. 2000) (upholding the grant of a motion to suppress on grounds that the trial court could have simply disbelieved the State witness's testimony).

8. *See Whitehead,* 130 S.W.3d at 876 ("[T]he trial court may disbelieve an allegation if there is a reasonable, articulable basis for doing so, either because there is conflicting evidence or because the evidence submitted is in some manner suspect or determined by the court to be inadequate.").

9. TEX.CODE CRIM. PROC. ANN. art. 26.04(m). Though this particular article specifically pertains to "Procedures for Appointing Counsel," this Court has determined that the factors listed are relevant to a finding of indigence for purposes of procuring a free appellate record. *See Whitehead,* 130 S.W.3d at 878.

The appellant argues that the court of appeals' decision conflicts with our holding in *Whitehead v. State.*[10] Specifically, the appellant invokes the statement that trial courts do not have unfettered discretion to disbelieve evidence of indigency and "should accept the defendant's evidence absent some reason in the record for not doing so."[11] Appellant maintains that he made a prima facie showing of indigence and that the evidence produced supports this showing. Meanwhile, the State contends that these two payments are unnecessarily high and that an unnecessarily large expense essentially equates to an unnecessary expense. The State further argues, essentially, that there was a reasonable, articulable basis in the record for the trial court to reject the appellant's proffer of prima facie evidence of indigence in that the appellant's expenses were unnecessarily high.

We hold that an inquiry into the reasonableness of a defendant's expenses is appropriate in order to adequately determine whether a defendant can pay or give security for an appellate record. Taxpayers should not have to pay for an appellate record on behalf of a defendant who is living a lifestyle substantially beyond his means while claiming to be indigent. If a defendant's own evidence proffered in support of a showing of indigence demonstrates unreasonable expenses, or expenses that are manifestly unreasonably high, that may serve as a basis in the record to support a trial court's conclusion that he is not indigent. Therefore, it is acceptable for a trial court to make a finding that a defendant's expenses are unreasonably high and could reasonably be reduced to an amount sufficient that the defendant is able to pay or give security for an appellate record.

However, the reasonableness of a defendant's expenses and financial obligations must be viewed in light of the totality of his financial situation and not in isolation. The fact that a defendant's income is less than his expenses does not create an automatic presumption that his expenses are unreasonable. Unless his expenses are intrinsically unreasonable, or manifestly unreasonably high, concrete evidence must exist in the record to show that a defendant's expenses are indeed unreasonable and overly burdensome on his limited financial resources. A court cannot presume unreasonableness; some aspect of the record must support such a determination.

In *Zanghetti v. State,*[12] the appellant claimed she was indigent and entitled to a free appellate record. At issue were her 1974 Lincoln Continental and her purported luxury apartment. The State claimed her vehicle had a value of $5000 with an outstanding encumbrance of $1600.[13] The State argued the appellant, therefore, had $3400 she could devote to paying for the appellate record.[14] In addition, the State contended the apartment, at $225 per month, was a "relative luxury."[15] However, this Court determined that the only evidence pertaining to the car was that there was no market for a used 1974 Lincoln Continental, and there was nothing in the record to prove the appellant's apartment could be characterized as a "luxu-

**10.** 130 S.W.3d 866 (Tex.Crim.App.2004).

**11.** *Id.* at 875.

**12.** 582 S.W.2d 461 (Tex.Crim.App.1979).

**13.** *Zanghetti,* 582 S.W.2d at 462–63.

**14.** *Id.* at 463.

**15.** *Id.*

ry."[16] The Court concluded that the appellant met her burden and made a prima facie showing of her right to a free appellate record.[17]

In the record currently before us, the evidence shows the appellant had a monthly income of, at most, $1200 and expenses of $1790, while the appellate record would cost between $2100 and $2800. Based on these facts, it is apparent that the appellant is unable to pay or give security for an appellate record. Crediting only this evidence, we could only conclude that the appellant, by definition, would qualify as an indigent. In *Whitehead,* we acknowledged that a defendant could establish a prima facie showing of indigence on nothing more than his own testimony, and "that a trial court should accept the defendant's evidence absent some reason in the record for not doing so."[18] There is nothing inherent in the appellant's evidence of indigence to support a finding that his expenses are manifestly unreasonably high. The State has not shown that $950 is an exorbitant amount to pay in rent for an apartment in the Austin area, or that his car payment is extravagant. More to the point, the record contains no evidence that, even if the appellant were able to reduce these expenses, he would then be able to pay for the record. The appellant would have to reduce his expenses by $590 a month just to equalize his expenses with his income. Reviewing the appellant's expenses in light of his total financial situation, no evidence exists that suggests his rent and car payment are unreasonable or that, but for these expenses, the appellant would be able to pay or give security for the record. We cannot say that this record provides a basis for the trial court to reject the appellant's evidence of indigence.

## CONCLUSION

We hold that an inquiry into the reasonableness of a defendant's expenses and financial obligations is proper in order to adequately determine whether a defendant is capable of paying for or entitled to a free appellate record. But we vacate the court of appeals' decision because its rejection of the appellant's evidence of indigence is unsupported by the record. On the basis of this holding, coupled with the fact that more than two years have elapsed since the appellant's indigency hearing and his circumstances may have changed, we remand to the trial court to conduct a new hearing. In light of our holding, the trial court may reassess not only the appellant's finances but also the reasonableness of his expenses. If the trial court finds that the appellant's expenses are unreasonable and, but for the unreasonable expenses, the appellant would be able to pay or give security for the appellate record, then the trial court may deny the appellant access to a free appellate record.

Accordingly, the court of appeals' judgment is vacated, and the cause is remanded to the trial court for further proceedings not inconsistent with this opinion.

---

16. *Id.*

17. *Id.*

18. *Whitehead,* 130 S.W.3d at 875.