

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-10-00263-CR

SCOTT ALAN AKIN                                                          APPELLANT

V.

THE STATE OF TEXAS                                                          STATE

----------

## FROM COUNTY CRIMINAL COURT NO. 1 OF DENTON COUNTY

----------

## MEMORANDUM OPINION[1]

----------

## I. Introduction

Appellant Scott Alan Akin appeals the trial court's order revoking his community supervision. We affirm.

----------

[1]*See* Tex. R. App. P. 47.4.

## II. Factual and Procedural Background

On January 29, 2008, Akin, appearing pro se, was found guilty of assault—family violence. He received a $2000 fine and a sentence of 365 days' confinement that was probated to twenty-four months' community supervision. Akin then filed a pro se notice of appeal, and this court abated the case for an indigency determination. The trial court found Akin "not indigent." This court affirmed Akin's conviction. *See Akin v. State*, No. 02-08-00062-CR, 2009 WL 806902, at *1–2 (Tex. App.—Fort Worth Mar. 26, 2009, no pet.) (mem. op., not designated for publication). We noted in that opinion that Akin did not appeal the trial court's indigency determination. *Id*. at *1 n.4.

In early December 2009, after Akin fell behind on several of his community supervision obligations, and, at Denton County Probation Officer Lance Washburn's request, the trial court held a show cause hearing to impress upon Akin the importance of adhering to the terms of his community supervision and to offer Akin an option to avoid revocation.[2]

On December 18, 2009, the State filed a motion to revoke Akin's community supervision. On January 11, 2010, Akin signed the trial court's admonishments regarding his right to counsel. Akin did not file an affidavit of indigency. On February 2, 2010, Akin's wife sent the trial court a letter generally

---

[2]The record does not contain a transcript of the hearing. Washburn testified about the outcome of the show cause hearing at the subsequent revocation hearing.

describing the Akin family's inability to afford an attorney, emphasizing the family's efforts toward unity, and stating her opposition to Akin's prosecution.

Between February 8, 2010, and May 21, 2010, the trial court held four pro se admonishment hearings. At the February 8, 2010 hearing, Akin acknowledged that he signed the trial court's admonishments regarding pro se representation. He also confirmed that, at the trial court's request, he had discussed the disadvantages of self-representation with a criminal defense attorney. Akin stated that he had received a quote from a single attorney for representation, that the fee was too high, and that he was putting all of his extra money towards his existing fines and fees. The trial court granted Akin an extension to obtain counsel.

On April 19, 2010, the trial court held a second admonishment hearing, reiterating the same information set out above. In response to the trial court's questioning, Akin stated that he was thirty-seven years old, that his wife earned "just under" $60,000 per year, and that they had four children. He also said that he had recently started a landscape business, had an associate's degree in computer science, took anti-anxiety medication, and had represented himself at his earlier criminal trial. Akin confirmed that he understood the charges in the motion to revoke and that he had never had any competency or literacy issues. Akin also stated that his financial situation had not changed since his previous trial—in which the trial court had determined that he was not indigent—and that "unless the requirements ha[d] changed, [he] probably wouldn't qualify." Akin

3

reasserted that he allocated any extra money to his conviction's judgment and community supervision requirements. Akin admitted that he had only spoken to one attorney in Denton County and that he could not pay that attorney's quoted retainer. The trial court then granted Akin's request for more time to hire an attorney.

The third admonishment hearing, held on May 3, 2010, repeated the same points of the previous hearings. Akin expressed difficulty in finding an attorney, stating that the one attorney he visited (the same one mentioned in the previous hearing) charged more than Akin could afford. The trial court stated it thought the price Akin had been quoted was "awfully high" and guaranteed that more affordable attorneys practiced in Denton County. Akin then received a third extension to find counsel.

The final admonishment hearing, held on May 21, 2010, recapped much of the prior hearings. In addition, the trial court informed Akin that the maximum punishment for his offense was 365 days in jail and a $2,000 fine. Akin said that he was aware of possible defenses to the allegations in the motion to revoke and that he had knowledge of the rules of evidence and trial procedure. The trial court informed Akin that it would treat him as if he were a practicing attorney. Akin confirmed that he did not feel pressured to represent himself, and the trial court reminded Akin that he could hire an attorney before the revocation hearing.

Akin did not retain counsel, and at the June 25, 2010 revocation hearing, he pleaded "true" to five of the seven alleged community supervision violations.

4

In addition to testifying about Akin's violations, Washburn, Akin's probation officer, testified about the prior show cause hearing. He said that he used show cause hearings as a deterrent and that

> [i]f [the probationer will] come in and do a show-cause hearing, they'll explain to the judge why they haven't completed what was required of them. The judge will express to them, you know, the need to get going on their conditions of probation, and typically a weekend or two in County Jail will be a punitive action for not being in compliance with a court order. So I use them to avoid having a full-blown revocation whenever I think maybe -- you know, something more serious than just me trying to get them to do it when it's not working.

When asked about the outcome of the show-cause hearing, Washburn replied, "The judge sentenced [Akin] to two weekends in County Jail, and [Akin] refused to do it." After hearing all of the evidence, the trial court sentenced Akin to 120 days' confinement, stating,

> Mr. Akin, I -- I've tried to work with you from the very beginning, okay, and you've fought me and the court. And even despite that, I tried to work with you the best as I can. I begged you before Christmas to give you a really good option as to going to jail and not having a motion to revoke filed against you, and you just totally rejected it. I stood up here and begged you. I mean, I literally -- I've never begged or tried to work with a defendant more than I have you, I don't think. I begged you for an option back in December, and -- and you just wouldn't take it. You were so hardheaded.
>
> . . . .
>
> I think you have taken some things more seriously since the motion to revoke has been filed or the punishment that I'm going to give you would be harsher, because I have noticed a change in your attitude once the motion to revoke was filed. But -- but you haven't taken a lot of the stuff seriously even when you've been on probation. You can't go to a program that I order you to go to, and you missed four times in there during those first few weeks there. You don't do

5

things timely that I've asked you to do that – that don't even have anything to do with finances. You weren't working for a period of time. You wouldn't do community service in a timely fashion.

You -- you -- you've done nothing but tie my hands as to what I have to do today. Okay? You've -- you've chosen the road that you wanted to go. The judgment that -- you have earned the judgment that I'm about to give you. I'll put it that way. And -- and -- and I hope the time that you're going to sit in jail, that you will learn something from this and that you don't want to ever have to go through anything like this again, but you have earned it.

When Akin attempted to interrupt the trial judge during this statement, the trial judge cut him off, stating, "No, this is not the time to talk." Akin did not object to the trial judge's comments. This appeal followed.

### III. Appointed Counsel

In his first point, Akin challenges the trial court's determination that he was not indigent and, therefore, not eligible to have counsel appointed for the revocation hearing.

### A. Indigence

A defendant has the right to counsel at a community supervision revocation hearing. Tex. Code Crim. Proc. Ann. art. 42.12, § 21(d) (West Supp. 2010); *Mempa v. Rhay*, 389 U.S. 128, 137, 88 S. Ct. 254, 258 (1967); *Ex parte Jentsch*, 510 S.W.2d 320, 321 (Tex. Crim. App. 1974). To be found indigent, a defendant ordinarily must first submit to the court an affidavit of indigency. Tex. Code Crim. Proc. Ann. art. 26.04(o) (West Supp. 2010). However, an affidavit of indigency is not required where the accused otherwise makes known to the trial

6

court that he is indigent. *See Harriel v. State*, 572 S.W.2d 535, 537 (Tex. Crim. App. 1978).

Determination of indigency is made on a case-by-case basis and involves a two-part process: (1) the defendant must make a prima facie showing of indigency, and (2) if the defendant satisfies that burden, the burden then shifts to the State to show the defendant is not, in fact, indigent. *McFatridge v. State*, 309 S.W.3d 1, 5–6 (Tex. Crim. App. 2010); *Tuck v. State*, 215 S.W.3d 411, 414–15 (Tex. Crim. App. 2007). Then,

> unless there is some basis in the record to find the defendant's *prima facie* showing to be inaccurate or untrue, the trial court should accept it as sufficient to find him indigent. After a defendant establishes a *prima facie* showing of indigency, an appellate court can uphold a trial court's determination of non-indigence only if the record contains evidence supporting such a determination. In *Whitehead*, we recognized that the two-step process outlined above . . . applies when determining whether a person is indigent for purposes of appointed counsel. A reviewing court should uphold a trial court's ruling denying indigent status only if it finds that the trial court, having utilized this two-step process, reasonably believed the defendant was not indigent.

*McFatridge*, 309 S.W.3d at 6 (internal quotations and citations omitted); *see also Whitehead v. State*, 130 S.W.3d 866, 874 (Tex. Crim. App. 2004).

There is no specific rule or legislation addressing what constitutes a prima facie case of indigency. To determine if a defendant is indigent, the trial court may consider the defendant's income, source of income, assets, property owned, outstanding obligations, necessary expenses, the number and ages of dependents, and spousal income that is available to the defendant, as well as the

7

defendant's affidavit of indigency, sworn testimony, and proper financial documentation. Tex. Code Crim. Proc. Ann. art. 26.04(m)–(n); *McFatridge*, 309 S.W.3d at 5–6; *Whitehead*, 130 S.W.3d at 877–78. A defendant is required to exercise due diligence in establishing his prima facie case of indigency. *Abdnor v. State*, 712 S.W.2d 136, 140–41 (Tex. Crim. App. 1986).

The appellate court is limited to the evidence before the trial court at the time of its ruling. *Whitehead*, 130 S.W.3d at 872. While the appellate court gives deference to the trial court's ruling, the trial court's discretion is neither "unfettered" nor "unbridled"; and the trial court must have a reasonable articulable basis if it discounts or disregards appellant's evidence. *Id.* at 875–76.

Although Akin did not file an affidavit of indigency, his lack of counsel during the early stages of the revocation process necessitated an examination by the trial court of Akin's potential indigence.[3] *See Oliver v. State*, 872 S.W.2d 713, 716 (Tex. Crim. App. 1994). The letter from Akin's wife also put the trial court on notice of Akin's potential indigence. *Cf. Foley v. State*, 514 S.W.2d 449, 450 (Tex. Crim. App. 1974).

Despite not having held a separate indigency hearing, the trial court did not neglect considering Akin's financial circumstances, and the record contains evidence to support the trial court's finding Akin not indigent. *See id.* at 452

---

[3]The record does not indicate when the trial court first became aware that Akin lacked counsel, but Akin signed a document entitled "Court's Admonitions to Defendant Not Represented by a Lawyer" within thirty days after the motion to revoke was filed.

(holding the defendant not indigent without having a separate indigency hearing). By having Akin testify at the admonishment hearings about the statutory factors listed in article 26.04(m), the trial court gave Akin an opportunity to prove a prima facie case of indigency. *See* Tex. Code Crim. Proc. Ann. art. 26.04(m); *Whitehead*, 130 S.W.3d at 876 (holding that defendant's financial allegations are taken to be true absent a reason to believe otherwise). Akin testified that he had recently started his own landscaping business and that his wife earned just under $60,000 per year. While Akin testified that he supported a wife and four children and incurred other expenses, some of which were related to his prior conviction, neither Akin's testimony, in which he agreed that he was not indigent, nor his wife's letter detailed those expenses or any other facet of the couple's financial situation. Akin provided no other details or documentation. Even ignoring Akin's admission that he did not qualify as indigent, Akin's general assertion that he could not afford an attorney, without more, failed to meet his burden to prove a prima facie case of indigency. *See McFatridge*, 309 S.W.3d at 6 (noting defendant's burden of production); *see also Thomas v. State*, 474 S.W.2d 692, 695 (Tex. Crim. App. 1972) (finding proper jury instruction defining prima facie evidence as evidence that is not conclusive but may be rebutted or overcome by contrary evidence and "proof of the case, upon which the jury [m]ay find a verdict, unless rebutted by other evidence"); *Taylor v. State*, No. 11-09-00117-CR, 2009 WL 1165544, at *3 (Tex. App.—Eastland Apr. 30, 2009, no pet.) (mem. op., not designated for publication) (holding that defendant's general statements

9

concerning lack of ability to pay for a record failed to establish prima facie case of indigency).

Further, given the evidence in the record, the trial court could have reasonably believed that Akin was not indigent because the income available to Akin was sufficient to afford an attorney. *See Tuck*, 215 S.W. 3d at 416 (assessing defendant's expenses in light of the totality of defendant's financial situation). And, although Akin asserts that it was an injustice for the trial court to conclude that his wife's income was available to him when she was the complaining witness in the original assault trial, Akin points to no evidence to support the contention that his wife's income was *not* available to him. Whatever the status of the relationship between Akin and his wife at the assault trial, given Akin's wife's letter, the trial court could have reasonably believed that the relationship at the revocation hearing, over a year later, was such as would allow Akin access to his wife's income. *See Whitehead*, 130 S.W.3d at 880 (acknowledging circumstances regarding indigency may change on remand after the case was on appeal over a year).

Because Akin did not meet his initial burden to produce evidence establishing a prima facie claim of indigency, we hold that the trial court's determination that Akin was not indigent is reasonably supported by the record. *See McFatridge*, 309 S.W.3d at 6; *see also Taylor*, 2009 WL 1165544, at *3. We overrule Akin's first point.

10

## IV. Judicial Bias

In his second point, Akin argues that by attempting to plea bargain with him, the trial judge was not a fair and impartial magistrate, and that because the trial judge applied a predetermined sentence,[4] Akin was punished by refusing the trial judge's offer.

### A. Standard of Review

Due process requires a neutral and detached hearing body or officer. *Gagnon v. Scarpelli*, 411 U.S. 778, 786, 93 S. Ct. 1756, 1761–62 (1973); *Brumit v. State*, 206 S.W.3d 639, 645 (Tex. Crim. App. 2006). One of the most fundamental components of a fair trial is a neutral and detached judge. *Dockstader v. State*, 233 S.W.3d 98, 108 (Tex. App.—Houston [14th Dist.] 2007 pet. ref'd). A judge should not act as an advocate or adversary for any party. *Id.* To reverse a judgment on the ground of improper conduct or comments of the judge, we must find (1) that judicial impropriety was in fact committed and (2) that this resulted in probable prejudice to the complaining party. *Id.* The scope of our review is the entire record. *Id.* Judicial remarks during the course of a trial that

---

[4]Because Akin did not challenge the propriety of his "predetermined" sentence below, he has waived the right to challenge that the actual sentence—revocation in lieu of continued community supervision—violated his due process rights, and we are limited to an examination of whether the trial court's alleged predetermination showed bias. *See Cole v. State*, 931 S.W.2d 578, 579–80 (Tex. App.—Dallas 1995, pet. ref'd); *see also Garza v. State*, No. 07-09-00132-CR, 2009 WL 3028989, at *1 (Tex. App.—Amarillo Sept. 23, 2009, no pet.) (mem. op., not designated for publication) (holding failure to object at trial waived complaint about predetermined sentence).

are critical or disapproving of, or even hostile to counsel, the parties, or their cases ordinarily do not support a bias or partiality challenge. *Id.* Such remarks may constitute bias if they reveal an opinion deriving from an extrajudicial source; however, when no extrajudicial source is alleged, such remarks will constitute bias only if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible. *Id.*

## B. Applicable Law

### 1. Plea Bargaining

Plea bargaining is usually defined as the process by which the defendant in a criminal case relinquishes the right to go to trial in exchange for a reduction in either the charge, sentence, or both. *Perkins v. Court of Appeals for Third Supreme Judicial Dist. of Tex.*, 738 S.W.2d 276, 282 (Tex. Crim. App. 1987). Although Texas trial judges are not expressly prohibited by statute or any rule of law from participating in a plea bargaining session, a trial judge should not participate in any plea bargain agreement discussions until an agreement has been reached between the prosecutor and the defendant. *Id.*

### 2. Bias

A judge's comments indicate bias if they show that the judge determined a sentence without considering evidence or the full range of punishment. *Brumit*, 206 S.W.3d at 645. In *Brumit*, the trial judge stated, when sentencing a defendant to life in prison for the repeated aggravated sexual assault of two children, that she believed anybody who harms a child should be put to death.

*Id.* at 640. The court of criminal appeals concluded that the trial judge's comments, made after hearing evidence of the crime and testimony from the victims and their families about the effects of the crime and considering the full range of punishment, did not indicate bias. *Id.* at 645. *But see Earley v. State*, 855 S.W.2d 260, 262 (Tex. App.—Corpus Christi 1993) (finding bias when trial judge did not consider evidence but warned defendant of likely sentence should probation be revoked and then expressed disappointment when he could not impose harsher sentence), *pet. dism'd, improvidently granted*, 872 S.W.2d 758 (Tex. Crim. App. 1994); *Jefferson v. State*, 803 S.W.2d 470, 471 (Tex. App.— Dallas 1991, pet. ref'd) (finding bias when trial judge did not consider evidence and imposed a sentence that he had previously promised to impose).

## C. Analysis

Akin argues that the trial judge's comments during sentencing at the revocation hearing constituted a plea bargain with him.[5] However, the

---

[5]The State argues that because Akin failed to object to the trial judge's comments at the hearing, and because he does not argue that the comments by the trial judge constituted fundamental error, he has waived this error. *See Blue v. State*, 41 S.W.3d 129, 133 (Tex. Crim. App. 2000) (holding fundamental error need not be preserved to be brought on appeal). Although one of our sister courts of appeals has determined that a trial objection to allegedly biased statements by the trial judge is necessary to preserve error, the court of criminal appeals has yet to decide whether an objection to alleged bias of a trial judge is required to raise the issue on appeal. *See Brumit*, 206 S.W.3d at 644 (declining to rule on the issue); *Vick v. State*, 268 S.W.3d 859, 862 (Tex. App.—Texarkana 2008, pet. ref'd). However, we need not decide whether an objection is required to preserve the issue for appeal because, assuming Akin could raise this issue, we conclude that the trial judge's comments here did not show bias.

statements do not include any promise of leniency by the trial judge in exchange for a certain plea from Akin. The trial judge's comments about "begging" Akin to accept a "really good option" that Akin "totally rejected" do not show an attempt to elicit any particular plea from Akin at the revocation hearing. While the trial judge mentioned trying to work with Akin, there is no indication that the trial judge wanted Akin to plead true at the revocation hearing or that the trial judge offered a lesser punishment for such a plea. Based on the pro se admonishment hearings, in which the trial judge repeatedly warned Akin about the dangers of pro se representation and gave him several extensions to hire an attorney, and the fact that the trial judge did not let Akin interject a comment into the trial court's commentary, we conclude that the trial judge's comments do not reflect an attempt at plea bargaining, but rather reiterate the trial judge's attempts to help Akin continue with community supervision instead of revoking it. *Cf. Townsend v. State*, No. 05-05-00070-CR, 2006 WL 1085719, at *3–4 (Tex. App.—Dallas Apr. 26, 2006, pet. ref'd) (holding that after listening to defendant's rambling argument, the trial judge's statement in assessing a probated sentence—"if [the defendant came] back in this court again with all this strange [argument], I am going to assume that you need ten years in the penitentiary"— did not show bias).

Moreover, the record contains no evidence that the trial court made promises or warnings about what punishment would ensue if Akin violated the terms of his community supervision. *Cf. Earley*, 855 S.W.2d at 262; *Jefferson*,

14

803 S.W.2d at 471. At the revocation hearing, the trial judge heard evidence related to Akin's alleged violations and noted factors mitigating the severity of Akin's punishment—namely, that his attitude had changed and that he had begun "tak[ing] some things more seriously since the motion to revoke [was] filed." *See Brumit*, 206 S.W.3d at 645. And, after hearing the evidence, the trial judge sentenced Akin to less than the maximum allowable punishment, indicating that the judge considered the entire range of punishment. *See Jaenicke v. State*, 109 S.W.3d 793, 797 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd) (holding that the trial court's statements—that after listening to the evidence, it was forced to assess the maximum punishment—did not reveal a predetermined sentence and did not rebut presumption of a neutral and detached magistrate).

Further, although Washburn testified that the trial judge "sentenced" Akin to a term of two weekends in jail at the show-cause hearing and that Akin refused to serve this time, no record of this hearing is before us, and we cannot say that Washburn's testimony amounted to more than recounting Akin's refusal of the trial court's offer to modify Akin's community service obligations to avoid the more severe revocation action. Based on Akin's prior refusal to accept modified terms at the show cause hearing, the trial court did not show bias by failing to deploy this option in lieu of revoking Akin's community supervision. *See* Tex. Code. Crim. Proc. Ann. art. 42.12, §§ 22, 23; *Ex parte Tarver*, 725 S.W.2d 195, 199–200 (Tex. Crim. App. 1986) (noting that a trial court has considerable discretion to modify, revoke, or continue community supervision).

For the reasons stated above, we hold that the trial judge did not attempt to plea bargain with Akin and that the trial judge did not step beyond the bounds of a neutral, detached magistrate. We overrule Akin's second point.

## V. Conclusion

Having overruled both of Akin's points, we affirm the trial court's judgment.

PER CURIAM

PANEL: MCCOY, WALKER, and MEIER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: August 11, 2011