02-10-263-CR









 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

NO. 02-10-00263-CR

 

 


 
 
 SCOTT alan Akin
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE
 
 


 

 

----------

 

FROM COUNTY CRIMINAL Court NO. 1 OF DENTON
COUNTY

----------

 

MEMORANDUM
OPINION[1]

----------

 

I.  Introduction

 

Appellant
Scott Alan Akin appeals the trial court’s order revoking his community
supervision.  We affirm.

II.  Factual and Procedural Background

          On January 29, 2008, Akin, appearing pro se, was found
guilty of assault—family violence.  He received a $2000 fine and a sentence of
365 days’ confinement that was probated to twenty-four months’ community
supervision.  Akin then filed a pro se notice of appeal, and this court abated
the case for an indigency determination.  The trial court found Akin “not
indigent.”  This court affirmed Akin’s conviction.  See Akin v. State,
No. 02-08-00062-CR, 2009 WL 806902, at *1–2 (Tex. App.—Fort Worth Mar. 26,
2009, no pet.) (mem. op., not designated for publication).  We noted in that
opinion that Akin did not appeal the trial court’s indigency determination.  Id.
at *1 n.4.

          In early December 2009, after Akin fell behind on
several of his community supervision obligations, and, at Denton County
Probation Officer Lance Washburn’s request, the trial court held a show cause
hearing to impress upon Akin the importance of adhering to the terms of his
community supervision and to offer Akin an option to avoid revocation.[2]

          On December 18, 2009, the State filed a motion to revoke
Akin’s community supervision.  On January 11, 2010, Akin signed the trial court’s
admonishments regarding his right to counsel.  Akin did not file an affidavit
of indigency.  On February 2, 2010, Akin’s wife sent the trial court a letter generally
describing the Akin family’s inability to afford an attorney, emphasizing the
family’s efforts toward unity, and stating her opposition to Akin’s prosecution.

          Between February 8, 2010, and May 21, 2010, the trial court
held four pro se admonishment hearings.  At the February 8, 2010 hearing, Akin
acknowledged that he signed the trial court’s admonishments regarding pro se
representation.  He also confirmed that, at the trial court’s request, he had discussed
the disadvantages of self-representation with a criminal defense attorney.  Akin
stated that he had received a quote from a single attorney for representation,
that the fee was too high, and that he was putting all of his extra money
towards his existing fines and fees.  The trial court granted Akin an extension
to obtain counsel.

          On April 19, 2010, the trial court held a second admonishment
hearing, reiterating the same information set out above.  In response to the
trial court’s questioning, Akin stated that he was thirty-seven years old, that
his wife earned “just under” $60,000 per year, and that they had four children. 
He also said that he had recently started a landscape business, had an
associate’s degree in computer science, took anti-anxiety medication, and had
represented himself at his earlier criminal trial.  Akin confirmed that he
understood the charges in the motion to revoke and that he had never had any
competency or literacy issues.  Akin also stated that his financial situation
had not changed since his previous trial—in which the trial court had
determined that he was not indigent—and that “unless the requirements ha[d]
changed, [he] probably wouldn’t qualify.”  Akin reasserted that he allocated
any extra money to his conviction’s judgment and community supervision
requirements.  Akin admitted that he had only spoken to one attorney in Denton County
and that he could not pay that attorney’s quoted retainer.  The trial court
then granted Akin’s request for more time to hire an attorney.

          The third admonishment hearing, held on May 3, 2010,
repeated the same points of the previous hearings.  Akin expressed difficulty
in finding an attorney, stating that the one attorney he visited (the same one
mentioned in the previous hearing) charged more than Akin could afford.  The trial
court stated it thought the price Akin had been quoted was “awfully high” and
guaranteed that more affordable attorneys practiced in Denton County.  Akin
then received a third extension to find counsel.

          The final admonishment hearing, held on May 21, 2010, recapped
much of the prior hearings.  In addition, the trial court informed Akin that
the maximum punishment for his offense was 365 days in jail and a $2,000 fine. 
Akin said that he was aware of possible defenses to the allegations in the
motion to revoke and that he had knowledge of the rules of evidence and trial
procedure.  The trial court informed Akin that it would treat him as if he were
a practicing attorney.  Akin confirmed that he did not feel pressured to
represent himself, and the trial court reminded Akin that he could hire an
attorney before the revocation hearing.

          Akin did not retain counsel, and at the June 25, 2010
revocation hearing, he pleaded “true” to five of the seven alleged community
supervision violations.  In addition to testifying about Akin’s violations,
Washburn, Akin’s probation officer, testified about the prior show cause
hearing.  He said that he used show cause hearings as a deterrent and that

[i]f [the
probationer will] come in and do a show-cause hearing, they’ll explain to the
judge why they haven’t completed what was required of them.  The judge will
express to them, you know, the need to get going on their conditions of
probation, and typically a weekend or two in County Jail will be a punitive
action for not being in compliance with a court order.  So I use them to avoid
having a full-blown revocation whenever I think maybe -- you know, something
more serious than just me trying to get them to do it when it’s not working.

 

When asked about the outcome of the show-cause hearing, Washburn
replied, “The judge sentenced [Akin] to two weekends in County Jail, and [Akin]
refused to do it.”  After hearing all of the evidence, the trial court sentenced Akin to 120 days’ confinement, stating,

Mr. Akin,
I -- I’ve tried to work with you from the very beginning, okay, and you’ve
fought me and the court.  And even despite that, I tried to work with you the
best as I can.  I begged you before Christmas to give you a really good option
as to going to jail and not having a motion to revoke filed against you, and
you just totally rejected it.  I stood up here and begged you.  I mean, I
literally -- I’ve never begged or tried to work with a defendant more than I
have you, I don’t think.  I begged you for an option back in December, and --
and you just wouldn’t take it.  You were so hardheaded.

 

. . . .

 

I think
you have taken some things more seriously since the motion to revoke has been
filed or the punishment that I’m going to give you would be harsher, because I
have noticed a change in your attitude once the motion to revoke was filed. 
But -- but you haven’t taken a lot of the stuff seriously even when you’ve been
on probation.  You can’t go to a program that I order you to go to, and you
missed four times in there during those first few weeks there.  You don’t do
things timely that I’ve asked you to do that – that don’t even have anything to
do with finances.  You weren’t working for a period of time.  You wouldn’t do
community service in a timely fashion.

 

You --
you -- you’ve done nothing but tie my hands as to what I have to do today. 
Okay?  You’ve -- you’ve chosen the road that you wanted to go.  The judgment
that -- you have earned the judgment that I’m about to give you.  I’ll put it
that way.  And -- and -- and I hope the time that you’re going to sit in jail,
that you will learn something from this and that you don’t want to ever have to
go through anything like this again, but you have earned it.

 

When Akin attempted to interrupt the trial judge during this statement,
the trial judge cut him off, stating, “No, this is not the time to talk.”  Akin
did not object to the trial judge’s comments.  This appeal followed.

III.  Appointed Counsel

          In his first point, Akin challenges the trial court’s
determination that he was not indigent and, therefore, not eligible to have counsel
appointed for the revocation hearing.

A.  Indigence

          A defendant has the right to
counsel at a community supervision revocation hearing.  Tex. Code Crim. Proc.
Ann. art. 42.12, § 21(d) (West Supp. 2010); Mempa v. Rhay, 389 U.S. 128,
137, 88 S. Ct. 254, 258 (1967); Ex parte Jentsch, 510 S.W.2d 320, 321
(Tex. Crim. App. 1974).  To be found indigent, a defendant ordinarily must
first submit to the court an affidavit of indigency.  Tex. Code Crim. Proc.
Ann. art. 26.04(o) (West Supp. 2010).  However, an affidavit of indigency
is not required where the accused otherwise makes known to the trial court that
he is indigent.  See Harriel v. State, 572 S.W.2d 535, 537 (Tex. Crim.
App. 1978).

Determination of indigency is made on a case-by-case basis and
involves a two-part process:  (1) the defendant must make a prima facie showing
of indigency, and (2) if the defendant satisfies that burden, the burden then
shifts to the State to show the defendant is not, in fact, indigent.  McFatridge v. State, 309 S.W.3d 1,
5–6 (Tex. Crim. App. 2010); Tuck v. State, 215
S.W.3d 411, 414–15 (Tex. Crim. App. 2007).  Then,

unless
there is some basis in the record to find the defendant’s prima facie
showing to be inaccurate or untrue, the trial court should accept it as
sufficient to find him indigent.  After a defendant establishes a prima
facie showing of indigency, an appellate court can uphold a trial court’s
determination of non-indigence only if the record contains evidence supporting
such a determination.  In Whitehead, we recognized that the two-step
process outlined above . . . applies when determining whether a person is
indigent for purposes of appointed counsel.  A reviewing court should uphold a
trial court’s ruling denying indigent status only if it finds that the trial
court, having utilized this two-step process, reasonably believed the defendant
was not indigent.

 

McFatridge, 309 S.W.3d at 6 (internal quotations and citations omitted); see also Whitehead
v. State, 130 S.W.3d 866, 874 (Tex. Crim. App. 2004).

There is no specific rule or legislation addressing what
constitutes a prima facie case of indigency.  To determine if a defendant is
indigent, the trial court may consider the defendant’s income, source of
income, assets, property owned, outstanding obligations, necessary expenses, the
number and ages of dependents, and spousal income that is available to the
defendant, as well as the defendant’s affidavit of indigency, sworn testimony,
and proper financial documentation.  Tex. Code Crim. Proc. Ann. art. 26.04(m)–(n);
McFatridge, 309 S.W.3d at 5–6; Whitehead, 130 S.W.3d at
877–78.  A defendant is required to exercise due diligence in establishing his prima
facie case of indigency.  Abdnor v. State, 712 S.W.2d 136, 140–41 (Tex.
Crim. App. 1986).

          The appellate court is limited to the evidence before
the trial court at the time of its ruling.  Whitehead, 130 S.W.3d at
872.  While the appellate court gives deference to the trial court’s ruling,
the trial court’s discretion is neither “unfettered” nor “unbridled”; and the
trial court must have a reasonable articulable basis if it discounts or
disregards appellant’s evidence.  Id. at 875–76.

Although Akin did not file an affidavit of indigency, his lack of
counsel during the early stages of the revocation process necessitated an
examination by the trial court of Akin’s potential indigence.[3] 
See Oliver v. State, 872 S.W.2d 713, 716 (Tex. Crim. App. 1994).  The
letter from Akin’s wife also put the trial court on notice of Akin’s potential
indigence.  Cf. Foley v. State, 514 S.W.2d 449, 450 (Tex. Crim. App. 1974).

          Despite not having held a separate indigency hearing,
the trial court did not neglect considering Akin’s financial circumstances, and
the record contains evidence to support the trial court’s finding Akin not
indigent.  See id. at 452 (holding the defendant not indigent without
having a separate indigency hearing).  By having Akin testify at the
admonishment hearings about the statutory factors listed in article 26.04(m),
the trial court gave Akin an opportunity to prove a prima facie case of
indigency.  See Tex. Code Crim. Proc. Ann. art.
26.04(m); Whitehead, 130
S.W.3d at 876 (holding that defendant’s financial allegations are taken to be
true absent a reason to believe otherwise).  Akin testified that he had
recently started his own landscaping business and that his wife earned just
under $60,000 per year.  While Akin testified that he supported a wife and four
children and incurred other expenses, some of which were related to his prior
conviction, neither Akin’s testimony, in which he agreed that he was not
indigent, nor his wife’s letter detailed those expenses or any other facet of
the couple’s financial situation.  Akin provided no other details or
documentation.  Even ignoring Akin’s admission that he did not qualify as
indigent, Akin’s general assertion that he could not afford an attorney,
without more, failed to meet his burden to prove a prima facie case of
indigency.  See McFatridge, 309 S.W.3d at 6 (noting defendant’s burden
of production); see also Thomas v. State, 474 S.W.2d 692, 695 (Tex.
Crim. App. 1972) (finding proper jury instruction defining prima facie evidence
as evidence that is not conclusive but may be rebutted or overcome by contrary
evidence and “proof of the case, upon which the jury [m]ay find a verdict,
unless rebutted by other evidence”); Taylor v. State, No.
11-09-00117-CR, 2009 WL 1165544, at *3 (Tex. App.—Eastland Apr. 30, 2009, no pet.)
(mem. op., not designated for publication) (holding that defendant’s general
statements concerning lack of ability to pay for a record failed to establish
prima facie case of indigency).

Further, given the evidence in the record, the trial court could
have reasonably believed that Akin was not indigent because the income
available to Akin was sufficient to afford an attorney.  See Tuck, 215
S.W. 3d at 416 (assessing defendant’s expenses in light of the totality of
defendant’s financial situation).  And, although Akin asserts that it was an injustice
for the trial court to conclude that his wife’s income was available to him
when she was the complaining witness in the original assault trial, Akin points
to no evidence to support the contention that his wife’s income was not
available to him.  Whatever the status of the relationship between Akin and his
wife at the assault trial, given Akin’s wife’s letter, the trial court could
have reasonably believed that the relationship at the revocation hearing, over
a year later, was such as would allow Akin access to his wife’s income.  See
Whitehead, 130 S.W.3d at 880 (acknowledging circumstances regarding
indigency may change on remand after the case was on appeal over a year).

          Because Akin did not meet his initial burden to produce
evidence establishing a prima facie claim of indigency, we hold that the trial
court’s determination that Akin was not indigent is reasonably supported by the
record.  See McFatridge, 309 S.W.3d at 6; see also Taylor,
2009 WL 1165544, at *3.  We overrule Akin’s first point.

IV.  Judicial Bias

          In his second point, Akin argues that by attempting to
plea bargain with him, the trial judge was not a fair and impartial magistrate,
and that because the trial judge applied a predetermined sentence,[4]
Akin was punished by refusing the trial judge’s offer.

A.  Standard of Review

          Due process requires a neutral and detached hearing body
or officer.  Gagnon v. Scarpelli, 411
U.S. 778, 786, 93 S. Ct. 1756, 1761–62 (1973); Brumit v. State, 206
S.W.3d 639, 645 (Tex. Crim. App. 2006).  One of the most fundamental components
of a fair trial is a neutral and detached judge.  Dockstader v. State,
233 S.W.3d 98, 108 (Tex. App.—Houston [14th Dist.] 2007 pet. ref’d).  A judge
should not act as an advocate or adversary for any party.  Id.  To
reverse a judgment on the ground of improper conduct or comments of the judge,
we must find (1) that judicial impropriety was in fact committed and (2) that
this resulted in probable prejudice to the complaining party.  Id.  The
scope of our review is the entire record.  Id.  Judicial remarks
during the course of a trial that are critical or disapproving of, or even
hostile to counsel, the parties, or their cases ordinarily do not support a
bias or partiality challenge.  Id.  Such remarks may constitute bias if
they reveal an opinion deriving from an extrajudicial source; however, when no
extrajudicial source is alleged, such remarks will constitute bias only if they
reveal such a high degree of favoritism or antagonism as to make fair judgment
impossible.  Id.

B.  Applicable Law

          1.  Plea Bargaining

          Plea bargaining is usually defined as the process by
which the defendant in a criminal case relinquishes the right to go to trial in
exchange for a reduction in either the charge, sentence, or both.  Perkins
v. Court of Appeals for Third Supreme Judicial Dist. of Tex., 738 S.W.2d
276, 282 (Tex. Crim. App. 1987).  Although Texas trial judges are not expressly
prohibited by statute or any rule of law from participating in a plea
bargaining session, a trial judge should not participate in any plea bargain
agreement discussions until an agreement has been reached between the
prosecutor and the defendant.  Id.

          2.  Bias

          A judge’s comments indicate bias if they show that the
judge determined a sentence without considering evidence or the full range of punishment.  Brumit, 206 S.W.3d at 645.  In Brumit, the trial judge stated, when sentencing
a defendant to life in prison for the repeated aggravated sexual assault of two
children, that she believed anybody who harms a child should be put to death.  Id.
at 640.  The court of criminal appeals concluded that the trial judge’s
comments, made after hearing evidence of the crime and testimony from the
victims and their families about the effects of the crime and considering the
full range of punishment, did not indicate bias.  Id. at 645.  But
see Earley v. State, 855 S.W.2d 260, 262 (Tex. App.—Corpus Christi 1993)
(finding bias when trial judge did not consider evidence but warned defendant
of likely sentence should probation be revoked and then expressed disappointment
when he could not impose harsher sentence), pet. dism’d, improvidently
granted, 872 S.W.2d 758 (Tex. Crim. App. 1994); Jefferson v. State,
803 S.W.2d 470, 471 (Tex. App.—Dallas 1991, pet. ref’d) (finding bias when
trial judge did not consider evidence and imposed a sentence that he had previously
promised to impose).

C.  Analysis

          Akin argues that the trial judge’s comments during
sentencing at the revocation hearing constituted a plea bargain with him.[5]  However, the statements do not include any promise of leniency
by the trial judge in exchange for a certain plea from Akin.  The trial judge’s
comments about “begging” Akin to accept a “really good option” that Akin
“totally rejected” do not show an attempt to elicit any particular plea from
Akin at the revocation hearing.  While the trial judge mentioned trying to work
with Akin, there is no indication that the trial judge wanted Akin to plead
true at the revocation hearing or that the trial judge offered a lesser
punishment for such a plea.  Based on the pro se admonishment hearings, in
which the trial judge repeatedly warned Akin about the dangers of pro se representation
and gave him several extensions to hire an attorney, and the fact that the
trial judge did not let Akin interject a comment into the trial court’s
commentary, we conclude that the trial judge’s comments do not reflect an
attempt at plea bargaining, but rather reiterate the trial judge’s attempts to help
Akin continue with community supervision instead of revoking it.  Cf.
Townsend v. State, No. 05-05-00070-CR, 2006 WL 1085719, at *3–4 (Tex.
App.—Dallas Apr. 26, 2006, pet. ref’d) (holding that after listening to
defendant’s rambling argument, the trial judge’s statement in assessing a
probated sentence—“if [the defendant came] back in this court again with all
this strange [argument], I am going to assume that you need ten years in the
penitentiary”—did not show bias).

          Moreover, the record contains no
evidence that the trial court made promises or warnings about what punishment
would ensue if Akin violated the terms of his community supervision.  Cf.
Earley, 855 S.W.2d at 262; Jefferson, 803 S.W.2d at 471.  At the
revocation hearing, the trial judge heard evidence related to Akin’s alleged
violations and noted factors mitigating the severity of Akin’s
punishment—namely, that his attitude had changed and that he had begun
“tak[ing] some things more seriously since the motion to revoke [was] filed.”  See
Brumit, 206 S.W.3d at 645.  And, after hearing the evidence, the trial
judge sentenced Akin to less than the maximum allowable punishment, indicating
that the judge considered the entire range of punishment.  See Jaenicke v.
State, 109 S.W.3d 793, 797 (Tex. App.—Houston [1st Dist.] 2004, pet. ref’d)
(holding that the trial court’s statements—that after listening to the
evidence, it was forced to assess the maximum punishment—did not reveal a
predetermined sentence and did not rebut presumption of a neutral and detached
magistrate).

          Further, although
Washburn testified that the trial judge “sentenced” Akin to a term of two
weekends in jail at the show-cause hearing and that Akin refused to serve this
time, no record of this hearing is before us, and we cannot say that Washburn’s
testimony amounted to more than recounting Akin’s refusal of the trial court’s
offer to modify Akin’s community service obligations to avoid the more severe
revocation action.  Based on Akin’s prior refusal to accept modified terms at
the show cause hearing, the trial court did not show bias by failing to deploy
this option in lieu of revoking Akin’s community supervision.  See Tex.
Code. Crim. Proc. Ann. art. 42.12, §§ 22, 23; Ex parte Tarver, 725
S.W.2d 195, 199–200 (Tex. Crim. App. 1986) (noting that a trial court has considerable
discretion to modify, revoke, or continue community supervision).

          For the reasons stated above, we hold that the trial judge
did not attempt to plea bargain with Akin and that the trial judge did not step
beyond the bounds of a neutral, detached magistrate.  We overrule Akin’s second
point.

V.  Conclusion

          Having overruled both of Akin’s points, we affirm the
trial court’s judgment.

 

PER CURIAM

 

PANEL: 
MCCOY, WALKER, and MEIER, JJ.

 

DO
NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED:  August 11, 2011









          [1]See Tex. R. App. P. 47.4.





[2]The record does not
contain a transcript of the hearing.  Washburn testified about the outcome of
the show cause hearing at the subsequent revocation hearing.





[3]The record does not indicate when the trial
court first became aware that Akin lacked counsel, but Akin signed a document
entitled “Court’s Admonitions to Defendant Not Represented by a Lawyer” within
thirty days after the motion to revoke was filed.





[4]Because Akin did not
challenge the propriety of his “predetermined” sentence below, he has waived
the right to challenge that the actual sentence—revocation in lieu of continued
community supervision—violated his due process rights, and we are limited to an
examination of whether the trial court’s alleged predetermination showed bias. 
See Cole v. State, 931 S.W.2d 578, 579–80 (Tex. App.—Dallas 1995,
pet. ref’d); see also Garza v. State, No. 07-09-00132-CR, 2009 WL
3028989, at *1 (Tex. App.—Amarillo Sept. 23, 2009, no pet.) (mem. op., not
designated for publication) (holding failure to object at trial waived
complaint about predetermined sentence).





[5]The
State argues that because Akin failed to object to the trial judge’s comments
at the hearing, and because he does not argue that the comments by the trial
judge constituted fundamental error, he has waived this error.  See Blue v.
State, 41 S.W.3d 129, 133 (Tex. Crim. App. 2000) (holding fundamental error
need not be preserved to be brought on appeal).  Although one of our sister
courts of appeals has determined that a trial objection to allegedly biased
statements by the trial judge is necessary to preserve error, the court of
criminal appeals has yet to decide whether an objection to alleged bias of a
trial judge is required to raise the issue on appeal.  See Brumit, 206
S.W.3d at 644 (declining to rule on the issue); Vick v. State, 268
S.W.3d 859, 862 (Tex. App.—Texarkana 2008, pet. ref’d).  However, we need not
decide whether an objection is required to preserve the issue for appeal
because, assuming Akin could raise this issue, we conclude that the trial
judge’s comments here did not show bias.