

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-24-00050-CR

---

ALFREDO PAEZ, JR., APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

---

On Appeal from the 364th District Court
Lubbock County, Texas
Trial Court No. DC-2023-CR-2239, William R. Eichman, II, Presiding

---

April 3, 2024

## MEMORANDUM OPINION

Before QUINN, C.J., and PARKER and YARBROUGH, JJ.

Alfredo Paez, Jr. appealed his conviction for aggravated assault. The matter before us pertains to the trial court's order denying his request for a free record to prosecute the appeal. The trial court so denied the motion after convening an evidentiary hearing. Paez contends before us that he "made a prima facie showing of indigence in the trial court by showing that he does not have any assets, his income is modest after mandatory withholdings, and it will be impossible for Appellant to pursue his appeal if he is required to provide forward payment for the appellate record." We reverse and remand.

An appellant is indigent and entitled to a free appellate record when unable to pay or give security for it. TEX. R. APP. P. 20.2; *Tuck v. State*, 215 S.W.3d 411, 414–15 (Tex. Crim. App. 2007). The assessment occurs on a case by case basis with the focus resting on the movant's financial capability at the time of appeal, not trial. *Tuck*, 215 S.W.3d at 414–15. It also entails a two-step process. The initial burden lies with the appellant to make a prima facie showing of indigence through evidence. *Id.* at 415; *accord McFatridge v. State*, 309 S.W.3d 1, 6 (Tex. Crim. App. 2010)*.* Should that be done, the State must then rebut the showing. *Tuck*, 215 S.W.3d at 415. Furthermore, the trial court must accept the movant's evidence of indigence as true, unless there exists a reasonable, articulable basis to discount it. *Id.* Should indigent status be denied, we must then uphold the ruling "only if [we] find[] that the trial court, having utilized this two-step process, 'reasonably' believed the defendant was not indigent." *McFatridge*, 309 S.W.3d at 6.

Of further note is the discrete nature of the determinations when addressing whether one is indigent for purposes of appointed counsel versus a free record. *Id.* at 5–6. In other words, one "can be found indigent for one purpose without being found indigent for the other." *Id.* So, an appellant having been found financially capable of retaining counsel does not automatically negate entitlement to a free record. Resolution of the two questions must be made independently of the other, though they may have some interrelationship as explained below.

For instance, pertinent to the inquiry regarding a free record are factors utilized in assessing indigence entitling one to appointed counsel. *Tuck*, 215 S.W.3d at 6; *see Whitehead v. State*, 130 S.W.3d 866, 874 (Tex. Crim. App. 2004) (observing as much). They include the movant's "income, source of income, assets, property owned,

outstanding obligations, necessary expenses, the number and ages of dependents, and spousal income that is available to the defendant." *Tuck*, 215 S.W.3d at 6 (quoting TEX. CODE CRIM. PROC. ANN. art. 26.04(m)). One's ability to borrow money is also pertinent. *Whitehead*, 130 S.W.3d at 878.

However, whether the appellant posted or is capable of posting bond may not be considered, except to the extent that it reflects the applicant's financial circumstances. *Id.* at 875. For example, in posting bond, the movant's financial means may be reduced to an extent hindering his ability to afford counsel or a record. The same seems true concerning the retention or appointment of counsel. Being required to retain counsel because he is not indigent for that purpose may adversely affect his ability to pay for the record. *See Whitehead*, 130 S.W.3d at 878 (stating that the expense involved in hiring counsel or paying for the appellate record is also a valid consideration). So, those circumstances warrant attention, as well.

That said, we turn to the issue at bar. The limited record contains evidence indicating that Paez worked 40 hours a week earning $15 per hour. Utilizing mathematical principles illustrates his annual income approximated $28,800 (i.e., 40 hours x $15 x 4 weeks x 12 months). This is around $2,400 less than his annual income depicted on "Federal Poverty Guidelines Calculator" found of record. The Poverty Calculator also indicated his annual expenses approximated $29,000, leaving a monthly surplus of about $182. In turn, the affidavit of indigence accompanying his motion for a free record (also included in the appellate record) revealed cash on hand to be $328, a past child support debt of $22,000, and a monthly child support obligation of $899. To that we add the court reporter's estimate of the transcript's cost; it approximated $21,000. Finally, the State

3

neither contradicted any of this evidence, contested the motion, nor appeared at the hearing.[1]

At first blush, one could conclude that having only a monthly income surplus of $182 and $328 in the bank hardly evinced financial ability to pay or give security for a $21,000 reporter's record. Yet, income, expense, and cash on hand are but some components of the indigence equation. "Assets" and "property owned" are two others, under article 26.04(m) of the Code of Criminal Procedure. Paez offered little evidence touching upon either. And, while purporting to own no realty, he had "personal property." Moreover, his description of his personalty was rather conclusory; it consisted of nothing more than writing "personal household items" without any accompanying description or valuation of them. Such items could include property having *de minimus* worth or items potentially valuable. Indeed, Paez testified to being an artist. Whether those "personal household items" encompassed artwork susceptible to sale was left to conjecture, as was the nature, worth, and identity of all other property within his category of "personal household items."

But of greater concern is indication that the trial court relied on finding of non-indigence for purposes of securing appointed counsel when denying him a free record. We learn this from comments made at the hearing on entitlement to a free record. By then, the trial court had found he did "not qualify for court-appointed counsel at this time." Later, it would comment at the subsequent hearing for a free record: "[a]gain, the Court has made findings that he's not indigent. I'll look at the case law to see if that and the other information that you provide me – if that will change ***where I was going*** on this

---

[1] Nor did it file a response to Paez's appellate brief on the issue.

4

case." (Emphasis added). The earlier finding of non-indigence reasonably alluded to the denial of appointed counsel. And the trial court's mentioning it while also saying it would see if case law and other information "will change where I was going on this case" leads us to deduce that the earlier finding substantively affected the later one. In other words, we reasonably infer from the two statements that the trial court deemed Paez capable of paying for the record, to some degree, because it found him non-indigent for purposes of obtaining appointed counsel. That runs afoul of the rule mandating a discrete inquiry between the two subjects.

On the other hand, nothing of record suggests the trial court factored into its decision the financial impact, if any, of obligating Paez to hire counsel. One can logically infer that Paez being denied appointed counsel would mean he had to utilize his financial resources discussed earlier to retain one should he forgo acting *pro se*.[2] Doing that, in turn, could result in a reduction of assets available to pay for the $21,000 trial transcript.

In sum, we reverse the trial court's order denying Paez a free record due to the lack of a discrete inquiry, as explained above. Yet, Paez including conclusory descriptions in his affidavit of indigence pretermits us from holding him incapable of paying for the appellate record. Thus, we remand the proceeding to the trial court for rehearing. The trial court should cause to be filed with the Clerk of this court a supplemental record incorporating its ruling on rehearing in addition to the admitted exhibits and evidence no later than Friday, May 3, 2024.

Per Curiam

Do not publish.

---

[2] Of course, that assumes counsel would not act *pro bono*.